JIM DUNCAN *v.* STATE OF INDIANA.

[No. 3-974A149. Filed October 23, 1975.]

*Jack Murray,* of Knox, for appellant.

*Theodore L. Sendak,* Attorney General, *G. Philip Duck-wall,* Deputy Attorney General, for appellee.

GARRARD, J.—Duncan was charged with rape. A jury convicted him of assault and battery with intent to gratify sexual desires.

His appeal asserts three evidentiary errors, prejudicial commentary by the trial judge, and the giving of an erroneous instruction.

The basic evidence discloses that on the evening of September 13, 1973, several young people were having a party at a rest park near North Judson, Indiana. The prosecuting witness had been at the party, had become upset and started walking to North Judson. At this time, Duncan and one Dwight Timm were driving toward the rest park. When they passed the prosecuting witness, they turned around and offered her a ride to town. She accepted. Timm, however, drove to a secluded area nearby where he and then Duncan had intercourse with her. At trial she testified that she submitted as the result of fear and their threats. Duncan testified that while she did nothing to encourage him, she had consented.

As a part of the defense, Duncan produced a witness from whom he sought to elicit evidence of a prior statement made by the prosecuting witness to the effect that she had consented to the act of intercourse with Timm. The court excluded the evidence, stating that the proper foundation had not been laid. We have reviewed the transcript and have determined that this ruling was correct.

The cross examiner may, of course, seek to impeach the credibility of a witness by questioning the witness about prior statements he, or she, has made which contradict the testimony given by the witness at trial.

Where such statements regard collateral matters, the examiner is bound by the answer he receives and may not produce an independent witness to prove the contradic-diction unless the extrinsic evidence sought from the other witness is independently admissible. (e.g. evidence that has inherent probative value to establish bias or prejudice). *Wells* v. *State* (1959), 239 Ind. 415, 158 N.E.2d 256; *Keel* v. *State* (1975), 165 Ind. App. 579, 333 N.E.2d 328. *See, also* McCormick on Evidence (1972 Ed.) pp. 70, 71.

Even where the examiner is entitled to prove the contradiction by extrinsic evidence, he must first lay a proper foundation for doing so in the examination of the witness he seeks to impeach. As stated by our Supreme Court in *Taylor* v. *State* (1967), 249 Ind. 238, 241, 231 N.E.2d 507, 508:

> "Laying the foundation for impeachment is an exacting procedure. The questions must be specific as to time, place and other substantial matters involved, and the questions should be so framed as to permit a negative or affirmative answer."

More recently in *Gradison* v. *State* (1973), 260 Ind. 688, 300 N.E.2d 67, the Court indicated a possible relaxation in establishing all matters constituting the foundation, but stressed the necessity of calling the alleged utterance to the attention of the witness sufficiently to enable him to recall the event referred to.

The purpose for doing so is twofold. On the one hand, the witness must be given a fair opportunity to place the event so that he may prepare to disprove the statement or explain it away if it admits to such an explanation. *Gradison, supra.* On the other hand, in order to clearly establish the impeaching character of the contradiction to the witness' present testimony, it is necessary to preclude oversight, misunderstanding or normal memory lapse on the part of the witness that might excuse or explain the contradiction or at least render it equivocal.

Thus, the examiner should first call the attention of the witness to the time, place, and those present when the statement is alleged to have been made. He may also refer to any surrounding circumstances which might serve to mark the occasion and jog the memory. The extrinsic evidence is then admissible if the witness denies having made the statement or asserts that he cannot recall having made it. *Aikins* v. *State* (1971), 256 Ind. 671, 271 N.E.2d 418.

Here the prosecuting witness was asked whether about two weeks after the alleged offense in the town of North Judson she had a conversation in the presence of a Dorothy Garbison and a Brenda Risner during which she stated that neither Duncan nor Timm had raped her, but she had consented. In posing his questions, counsel twice referred to the occasion as being one where the three girls had been together and had seen Dwight Timm.

The witness replied that she recalled the occasion but denied making the statements attributed to her by counsel. No attempt was made to either establish or preclude such a conversation among the three at any other time or place.

The defense then called Brenda Risner to testify. She stated that in the latter part of September or the first part of October she, Dorothy Garbison and the prosecuting witness had been together in North Judson walking on Main Street when they had seen Timm. She testified that the prosecuting witness had acted afraid and told them to run. She, however, confirmed the testimony of the prosecuting witness that nothing had been said about Timm.

Counsel then inquired whether there was another time after this that she had a conversation with the prosecuting witness. The state's objection to this inquiry was sustained. The ruling was proper since no foundation had been even attempted regarding other conversations on other occasions.

During direct examination of the prosecuting witness, she was asked:

"Q. Now when Mr. Dwight Timm got back in the car, would you relate to the jury what you recall occurred next?"

This was objected to as calling for hearsay. The objection was ill taken. The inquiry was what happened, not what was said. Furthermore, what Timm and the prosecuting witness said during this part of the incident resulting in the act of intercourse between the witness and Timm and immediately preceding the act of intercourse with Duncan was admissible. At issue were the opposing questions of intercourse by force or by consent. The acts of intercourse were so closely related under the circumstances that what occurred with Timm was relevant circumstantial evidence bearing on the guilt or innocence of Duncan. The statements of Timm were admissible not for the truth of the matter asserted, but as the verbal part of his actions toward the young woman. *See* Wigmore, Evidence, §§ 1772-1786; McCormick on Evidence (2d Ed.) p. 589. Her statements were admissible as circumstantial evidence of her state of mind. (*See* McCormick, pp. 687, 694-701. *Accord, Roddy* v. *State* (1970), 254 Ind. 50, 257 N.E.2d 816; *Kiefer* v. *State* (1960), 241 Ind. 176, 169 N.E.2d 723, which would permit admission of the evidence as part of *res gestae*.) Both the question and the answer were proper.

Duncan next objects because during direct examination of the prosecuting witness the state was permitted, over objection, to elicit that she and Timm had previously had an altercation which resulted in Timm hitting her. The only objection was that the question was not relevant. This is not sufficient to create a foundation for reversible error. *Indpls. T & T Co.* v. *Howard* (1920), 190 Ind. 97, 128 N.E. 35; *Beaty* v. *Donaldson* (1964), 136 Ind. App. 269, 200 N.E.2d 233.

During cross-examination of the prosecuting witness she was asked about previous sexual experience. Direct examination had shown that she had her sixteenth birthday some three months before the date of the alleged offense.

Counsel asked if she had not consented to other acts of intercourse. The state objected "unless the time of the act was established". In sustaining this objection the court stated:

"Sustained in that if she's under sixteen when it happened, it's impossible to have consent."

Thereupon Duncan asked for a mistrial. He asserts the courts statement was a display of prejudice toward him and that it cut off a legitimate line of inquiry.

We are aware, of course, of *Kennedy* v. *State* (1972), 258 Ind. 211, 280 N.E.2d 611, and similar cases condemning improper judicial intervention into a trial. We are convinced this is not a case of that ilk. The court's statement was made in explanation of its ruling on the objection to draw counsel's attention to the witness' age and her incapacity for consent before she reached her sixteenth birthday. The comment was occasioned by the way counsel phrased his question. Furthermore, the court permitted counsel to fully develop the number of times she had had intercourse and the number of persons with whom she had sexual relations. In other words, the court did not preclude Duncan from establishing the witness' prior conduct, nor the circumstances under which it occurred.

Finally, Duncan objects to the instruction through which the jury was advised they might convict Duncan of lesser offenses.

The objection urged, and the only one we consider, is that since the act of intercourse was admitted, the jury must find Duncan guilty of rape or nothing at all.

We disagree. Although perhaps sometimes anomalous, the law of Indana is well established that an accused may be found guilty of a lesser offense although the major offense is proved.[1] *Widup* v. *State* (1967), 250 Ind. 1, 230 N.E.2d 767; *Caudill* v. *State* (1946), 224 Ind. 531, 69 N.E.2d 549; *Chesterfield* v. *State* (1923), 194 Ind. 282, 141 N.E. 632.

As a result, in determining harmful error, there is a distinction between those cases in which complaint is made because the court instructed on lesser offenses and those where the error assigned is the refusal of the court to instruct on lesser offenses.

In the latter category the potential harm to the accused from the court's refusal to instruct on *any* lesser offense for which he might have received a lesser penalty is apparent. *Compare Jarrett* v. *State* (1975), 166 Ind. App. 19, 333 N.E. 2d 794 where failure to instruct on one lesser offense was harmless in view of the jury's conviction on the principal charge although the court had instructed on three other lesser offenses.

Thus, these decisions have been concerned with the nature of the principal offense, the terms of the charging affidavit, and the evidence adduced at trial to determine whether the accused in the particular case was erroneously harmed. *See Hester* v. *State* (1974), 262 Ind. 284, 315 N.E.2d 351; *Hash* v. *State* (1972), 258 Ind. 692, 284 N.E.2d 770; *Sullivan* v. *State* (1957), 236 Ind. 446, 139 N.E.2d 893.

The rationale employed to avoid some of the implications of the *Widup*-type decisions is that although the jury might be sustained in convicting for a lesser offense not really present in the case against the accused, the courts need not compound the illogic of doing so by invitation through the court's in-

1. See Judge White's discussion in *Robinson* v. *State* (1974), Ind. App., 309 N.E.2d 833.

structions. *Hester, supra; Cole* v. *State* (1922), 192 Ind. 29, 134 N.E. 867. The case of *Parrett* v. *State* (1928), 200 Ind. 7, 159 N.E. 755, relied on by Duncan, concerns such a refusal by the court to instruct on lesser offenses, and is inapplicable to the issue before us.

In cases such as Duncan's, the necessary element of harm is different. Clearly a defendant convicted of the principal offense cannot establish harmful error from the mere fact that the jury was instructed they might find him guilty of lesser charges. *Kirts* v. *State* (1926), 198 Ind. 39, 151 N.E. 132, *reh. den.* 198 Ind. 39, 152 N.E. 1; *Ruede* v. *State* (1928), 200 Ind. 112, 161 N.E. 565.

It is not here contended that the evidence does not sustain the conviction returned by the jury, nor could such a contention prevail.

Affirmed.

Staton, P.J. and Hoffman, J., concur.

NOTE.—Reported at 335 N.E.2d 827.