BILLY JO MERRITT *v.* STATE OF INDIANA.

[No. 1276S442. Filed January 16, 1978.]

*James F. Maguire*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Daniel Lee Pflum*, Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted, in a trial by jury, of First Degree Murder, Ind. Code § 35-13-4-1 (Burns 1975), and Assault and Battery with Intent to Kill, Ind. Code § 35-13-2-1 (Burns 1975). He was sentenced to life imprisonment upon the murder conviction, and to not less than two nor more than fourteen years imprisonment upon the assault and battery conviction. This direct appeal presents the following issues:

(1) Whether the evidence is sufficient to sustain the convictions upon either count.

(2) Whether the trial court committed reversible error by admitting into evidence certain photographs of the murder victim's corpse.

## ISSUE I

Upon review of the sufficiency of the evidence, this Court will look only to the evidence that tends to support the jury's verdict, together with all logical and reasonable inferences that may be drawn therefrom. *Baum* v. *State*, (1976) 264 Ind. 421, 345 N.E.2d 831. The Court will not judge the weight of the evidence or the credibility of the witnesses. *Rosell* v. *State*, (1976) 265 Ind. 173, 352 N.E.2d 750.

The evidence most favorable to the State indicates that the defendant, Billy Merritt, and one Robert Horrace came to the home of Doris and Percy Yarber. Merritt and Horrace both had handguns, and they told the Yarbers that they were in a jam and needed money. Merritt took Percy into the bedroom and made him lie on the bed. Doris heard gunshots coming from the bedroom. Horrace attempted to strangle Doris with a lamp cord. Merritt came from the bedroom, got a kitchen knife and stabbed her in the stomach and in the neck. While she was unconscious she was shot in the face. Percy Yarber died as a result of the gunshot wounds he received.

Doris Yarber testified that she was well acquainted with the defendant and with Horrace, that the defendant lived in Gary, Indiana but had frequently come to Indianapolis to visit socially with them.

Defendant argues that Doris Yarber's testimony identifying him as one of the assailants is incredible as a matter of law. He relies on the holding in *Wabash R. Co.* v. *McDoniels*, (1914) 183 Ind. 104, 107 N.E. 291, that the jury has the right to disregard testimony which is contrary to the laws of nature. In that case the decedent was hit by a train and was knocked fifty or sixty feet, and "pieces of flesh were found all along between the crossing and the place where decedent lay." An employee of the defendant railroad company testified that the

decedent stated he had been standing on the track when hit. The Court observed that "(t)o believe that this man, injured as he was, could give an intelligent account of the accident would test human credulity to the limit."

In the instant case, however, there is nothing inherently incredible concerning the testimony of Doris Yarber. Although her testimony was subject to close scrutiny by reason of her prior conflicting statements and the State's promise of immunity from prosecution upon a pending charge, her testimony was probative, relevant, and substantial. Its weight and credibility were matters for determination by the trier of fact. *Livingston* v. *State*, (1972) 257 Ind. 620, 277 N.E.2d 363.

The credibility of the alibi testimony was also a matter for the jury to determine, and it was not bound to believe such testimony notwithstanding that the State offered no evidence on rebuttal to refute it. Strictly speaking, alibi evidence is merely rebuttal evidence directed to that part of the State's evidence which tends to identify the defendant as the person who committed the crime. An alibi defense does not place the State in the position of bearing a burden of proof greater than would otherwise be required. *Casterlow* v. *State*, (1971) 256 Ind. 214, 267 N.E.2d 552.

## ISSUE II

Defendant also contends that photographs of the decedent as he was found dead on the bed, and other photographs of the decedent taken just prior to autopsy, were cumulative and inflammatory and therefore improperly admitted.

Photographs are admissible as evidence of anything to which a witness might himself be permitted to testify. *Carroll* v. *State*, (1975) 263 Ind. 696, 338 N.E.2d 264. All of the photographs introduced at trial and here challenged were illustrative of the circumstances of the decedent's death and tended to prove the cause of death.

*Walker* v. *State,* (1976) 265 Ind. 8, 349 N.E.2d 161; *Baum* v. *State, supra.* Although some of the photographs were repetitive and to some extent gruesome, their admission into evidence was not reversible error, since we cannot say that the relevancy of the photographs was outweighed by their potential to prejudice the defendant improperly. *Bates* v. *State,* (1977) 267 Ind. 8, 366 N.E.2d 659.

The defendant, upon this issue, relies upon *Kiefer* v. *State,* (1958) 239 Ind. 103, 153 N.E.2d 899, and the following passages quoted from that case:

> " 'Photographs are admissible to show the body of the victim; to establish the corpus delicti; to show the position of the parties to the crime, the position of the victim's body, the condition of the victim, the wounds of the victim, and the cause of death; . . . .' " 239 Ind. 112.

> "Photographs which show the body of a deceased during and after the autopsy was performed have been held inadmissible on the theory that they serve no material purpose and their only value is to arouse the emotions of the jury." 239 Ind. at 114.

Here, however, of the two groups of photographs objected to by Defendant, the first group shows the deceased as he was found dead upon the bed. These photographs were relevant to show the position of the body after the crime. The second group of photographs show the nude body of the deceased on an autopsy table, after removal from the scene of the crime. One of this group was relevant to show the location of a gunshot wound to the deceased's head and the cause of death. Two others merely revealed his nude body in the morgue, and we do not perceive its purpose, unless to incite passion, which we condemn. However, there had not yet been any surgical incisions made, and they were not in any way subject to the objections for which we reversed in *Kiefer.* They were relatively innoxious and their potential to inflame was minimal.

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J., DeBruler, Hunter and Pivarnik, JJ., concur.
NOTE.—Reported at 371 N.E.2d 382.