RICHARD L. DOWNING v. STATE OF INDIANA

[No. 2-977A351. Filed October 25, 1978.]

*Robert L. Barnet,* of Muncie, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *Mark Allen Mertz,* Deputy Attorney General, for appellee.

CHIPMAN, P.J. — Defendant-appellant Richard Downing was charged with delivery of a controlled substance[1] and convicted for possession of a controlled non-narcotic substance. By combining similar issues, Downing contends the trial court committed the following errors: (1) insufficient evidence to establish his possession of a controlled substance, (2) improper admission of evidence regarding prior contacts of police informant Powell and Officer Shelton with Downing, (3) inadequate chain of custody and (4) misstatement of evidence by the prosecutor during closing argument.

Finding no reversible error, we affirm.

I. Sufficiency

Downing contends that the trial court erred in denying his Motion for Directed Verdict and that his conviction was contrary to law. These arguments are predicated on the alleged absence of sufficient evidence to establish that he possessed a controlled substance.

In reviewing the sufficiency of the evidence, we look only to the evidence that tends to support the jury's verdict, together with all logical and reasonable inferences that may be drawn therefrom. *Merritt v. State* (1978), 267 Ind. 460, 371 N.E.2d 382, 383 *citing Baum v. State* (1976), 264 Ind. 421, 345 N.E.2d 831. The evidence most favorable to the State establishes the following sequence of events:

(1) At approximately 5:00 p.m. on September 11, 1975, in Hartford City, Downing told police informant Powell that he had marijuana and phencyclidine (PCP) for sale but that Powell would have to go to Eaton, Indiana to pick it up.

(2) Downing and Powell discussed the price for a gram of PCP and agreed on Sixty Dollars ($60).

(3) Subsequently, Powell went to Downing's shoe shop in Eaton and purchased a gram of PCP for Sixty Dollars ($60).

The testimony of Powell on direct examination by the State then reveals:

---

1. IC § 35-24.1-4.1-2 [Burns 1975]. Repealed by Acts 1976, P.L. 148 § 24 effective October 1, 1977.

Q. Now, then, the man that you gave the sixty dollars to and picked up the Hog in the plastic bag, is that man in the Courtroom?

A. Yes, he is.

Q. Could you tell the Jury who that is?

A. Red Downing.

Q. And it's the same defendant, is that right?

A. Yes.

We find substantial evidence of probative value from Powell's testimony that Downing possessed a controlled substance and, therefore, hold that his conviction was not contrary to law.

Downing asks us to consider the credibility of prosecuting witness Powell and weigh his testimony in light of his previous convictions and admitted use and sale of illegal drugs. This, of course, we must not do. The weight to be afforded the testimony of a witness is solely within the province of the jury. *Merritt v. State* (1978), 267 Ind. 460, 371 N.E.2d 382, 383 *citing Rosell v. State* (1976) 265 Ind. 173, 352 N.E.2d 750.

Similarly, we find no error in denying Downing's Motion for Directed Verdict. Since Downing introduced evidence after his motion was denied, he waived any error in the court's ruling. *Bush v. State* (1978), 176 Ind.App. 164, 374 N.E.2d 564, 566 *citing Parker v. State* (1976), 265 Ind. 595, 358 N.E.2d 110.

II. Admissibility of Prior Contacts

Downing next argues that the trial court erred in admitting evidence of his prior contacts with State's witnesses Powell and Officer Shelton over his relevancy and materiality objections. Downing contends that this testimony improperly established both prior crimes and police surveillance, respectively. The State answers that this evidence tended to establish Powell and Shelton's knowledge of Downing and the lack of a "set-up."

We express no opinion on whether this testimony met the evidentiary standard reaffirmed in *Bruce v. State* (1978), 268 Ind. 180, 375 N.E.2d 1042, 1074:

> [T]he most acceptable test of relevancy is the question, does the evidence offered render the desired inference *more probable than it would be without the evidence?* In Indiana, evidence tending to prove a material fact is admissible, even though its tendency in that direction may be exceedingly slight. (citations omitted)

In light of numerous decisions by this and our Supreme Court, we must hold that Downing has failed to preserve this issue for appellate review. In each portion of the transcript to which Downing directs our attention, the sole objection to this evidence was lack of relevancy or materiality. This is not sufficient to create a foundation for reversible error. *Duncan v. State* (1975) 166 Ind.App. 302, 335 N.E.2d 827, 830 *citing Indpls. T & T. Co. v. Howard* (1920), 190 Ind. 97, 128 N.E. 35; *Beaty v. Donaldson* (1964), 136 Ind.App. 269, 200 N.E.2d 233.

> [T]he objection, "irrelevant and immaterial", is too general and thus is insufficient to present any question upon appeal . . . . *Woods v. State,* (1975) 162 Ind.App. 316, 319 N.E.2d 688, 695 *citing Williams v. State,* (1907) 168 Ind. 87, 79 N.E. 1079; *Beaty v. Donaldson* (1964), 136 Ind.App. 269, 200 N.E.2d 233; 1 Bobbitt, Indiana Appellate Practice and Procedure 202.

III.   Chain of Custody

Downing also asserts that the trial court erred in admitting an evidence bag allegedly containing PCP since a sufficient chain of custody was not established. He contends that two "breaks" in the chain of custody of this substance render it inadmissible under *Graham v. State* (1970), 253 Ind. 525, 255 N.E.2d 652:

> *[W]here as in the case of seized or purchased narcotics, the object offered in evidence has passed out of the possession of the original receiver and into the possession of others, a chain of possession must be established to avoid any claim of substitution, tampering or mistake, and failure to submit such proof may result in the exclusion of the evidence or testimony as to its characteristics. Graham* at 656.

The first "break" allegedly occurred between September 11, 1975, when Officer Shelton came into possession of this bag and September 16, 1975, when Officer Shelton sent it via certified, registered mail to the State Police Laboratory for testing. The second "break" is said to have occurred at the police lab where the bag was placed in a lock-up to which seven or eight people had access.

With respect to the first break in the chain of custody, the evidence most favorable to the State reveals in pertinent part the following sequence of events:

(1) In the late afternoon or early evening hours of September 11, 1975, police informant Powell bought a plastic wrapper containing a brownish powder from Downing.

(2) Powell immediately turned the wrapper and its contents over to Officer Shelton.

(3) Officer Shelton then put the wrapper and its contents in his shirt pocket.

(4) On the evening of September 11, 1975, Officer Shelton placed the wrapper and its contents in an evidence bag on which he had written his signature and the case number.

(5) Subsequently, Officer Shelton placed the evidence bag in an envelope and sent it on September 16, 1975, via certified, registered mail to the police lab for testing.

The critical portion of the transcript reveals the following exchange between the State and Officer Shelton:

Q. What uh, what then did you do with this plastic bag that you'd taken or that Greg Powell had given you and you put in your shirt pocket?

A. I put it in a plastic, it's referred to as a plastic evidence bag uh after I put some markings on that specific item and then uh labeled the plastic evidence bag as well.

Q. Okay. What did you do then?

A. The evidence bag was then sealed and uh with evidence tape and placed in an envelope along with a log sheet, which I in turn sent to the State Police Laboratory to the attention of James Forbes.

Thus, we are presented with the question whether there is a fatal break in the chain of custody of the alleged PCP from September 11 to September 16 of 1975, such that its admission constituted reversible error.

We address this question with the benefit of numerous decisions de-

cided since *Graham, supra,* in 1970. The law in Indiana on the requisite chain of custody for the introduction of exhibits appears well settled. In situations such as the case at bar where an exhibit is small and is one which has physical characteristics fungible in nature and similar in form to substances familiar to people in their daily lives, the danger of tampering, loss, substitution or mistake is greatest. *Graham* at 655. In order to lay the required foundation for the introduction of such evidence, the State must show its continuous whereabouts at least from the time of police possession to laboratory testing. Although the purpose of this foundation requirement is the avoidance of any claims of substitution, tampering or mistake, we are not concerned with absolute certainty but with probabilities. *Jones v. State* (1973), 260 Ind. 463, 296 N.E.2d 407, 409. Thus, the mere possibility that evidence might have been tampered with will not make the evidence totally objectionable. *Kolb v. State* (1972), 258 Ind. 469, 282 N.E.2d 541, 546. The State need only present evidence which strongly suggests the whereabouts of the evidence sought to be admitted. *Guthrie v. State* (1970), 254 Ind. 356, 260 N.E.2d 579, 584. The chain of custody is proven then if there is no reasonable doubt as to the continuous whereabouts of the exhibit and that it has remained in an undisturbed condition. Pursuant to *Rinard v. State* (1976), 265 Ind. 56, 351 N.E.2d 20, 23, the precise issue which we address may be formed as follows: Did the State provide "reasonable assurance" that the exhibit passed from Shelton to police lab chemist Jim Forbes in an undisturbed condition?

We are unable to find reversible error in the admission of the evidence bag which allegedly contained PCP. The record clearly establishes that Officer Shelton acquired possession of a wrapper allegedly containing PCP on September 11, 1975, and that evening marked this wrapper and placed it in a marked evidence bag. From the excerpted portion of the transcript, *supra,* we can reasonably infer that Officer Shelton also sealed the evidence bag containing the wrapper in question that same evening. From this evidence and the fact that Officer Shelton mailed the evidence bag and its contents on September 16, 1975, to the police lab, we can reasonably infer that Shelton was the custodian of this exhibit during the crucial five day period.

We find no evidence which even tends to suggest that the evidence bag was tampered with during the five days in question. This is buttressed by the testimony of police chemist Jim Forbes that upon receipt of the evidence bag it was still sealed. We recognize the possibility that someone may have tampered with the bag and then replaced the evidence tape. Our inquiry and findings, however, must be based on probabilities, not possibilities. *Kolb, supra.* Although the chain is not perfect, we find evidence which strongly suggests the whereabouts of the bag during the five day period, and conclude that Downing has failed to establish a fatal break in the chain of custody.

Downing asserts that a second "break" occurred at the police lab where the evidence bag was placed in a lock-up accessible to seven or eight persons other than James Forbes who conducted the testing of the alleged PCP. We must disagree. We find numerous decisions which have found a sufficient chain of custody although several persons had access to the lock-up at the police testing laboratories. *See e.g. Mosqueda v. State* (1976), 168 Ind.App. 181, 342 N.E.2d 679, 681. Indeed, the facts in the case at bar establish a stronger chain of custody than those in *Telfare v. State* (1975) 163 Ind.App. 413, 324 N.E.2d 270, 273, where the court found an adequate chain although eight person had access to exhibits which were kept on *unlocked* shelves. Since the record does not support any inference of tampering by the seven or eight persons who had access to the evidence bag, we find an adequate chain of custody.

IV. Prosecutorial Misconduct

And finally, Downing contends the trial court erred in overruling his objection to the prosecutor's closing remarks which included a misstatement of the facts in evidence. Downing directs our attention to a portion of the prosecutor's final argument which reveals in pertinent part:

> Now you, if you get back in that juryroom, you tell me where in the world that gram of hog came from. Because if you wanta believe Mr. Parker who's such a sterling, outstanding, upright citizen. *Mr. Powell was in his sight all the time. Now, if Mr. Powell was gonna secrete someplace, something somewhere, he would have seen him.*
>
> MR. BARNET: Your Honor, I think that's a misstatement of the evidence. I think Mr. Powell or Mr. Parker testified he went back.

MR. JORDAN:   If the Court would please (inaudible) of Mr. Barnet (inaudible) I think I have a right to say what the evidence is and what I believe is. If that's a misstatement, the jury can so find.

MR. BARNET:   I don't think you have a right to comment on misstatements or facts not in evidence, your Honor.

MR. JORDAN:   (Inaudible)

THE COURT:   Gentlemen, wanta approach the bench.

(Counsel approaches the bench.)

Alright. Your objection is so noted and overruled.

(emphasis added)

Downing argues that these comments were both erroneous and prejudicial. He contends that Parker unequivocally testified that Powell *was* out of his sight for a short period of time. Downing contends the prosecutor's misstatement prejudiced his defense that Powell, who had been inside the shoe shop when Downing was not present, hid PCP there in order to return with Officer Shelton at a later date.

In final argument, it is, of course, only proper to comment upon the evidence elicited from the witness stand and presented by exhibits properly admitted into evidence. *Adams v. State* (1974), 262 Ind. 220, 314 N.E.2d 53, 60. Although we do not approve or condone remarks in arguments before a jury which are not supported by the evidence, we must recognize the fact that the trial court is in a better position to determine the propriety or impropriety of such remarks and whether or not they are harmful. The trial court must therefore be afforded a wide field of discretion as to such matters. *Jones v. State* (1973), 155 Ind.App. 536, 293 N.E.2d 545, 549; *Snow v. Cannelton Sewer Pipe Co.* (1965), 138 Ind.App. 119, 210 N.E.2d 118, 125. Since we agree with Downing that the prosecutor's comments misstated the evidence, we must determine whether this error warrants reversal.

A misstatement of the evidence by the prosecutor during closing argument warrants reversal only when the defendant establishes a clear showing of prejudice or breach of discretion on the part of the trial court. *Maynard v. State* (1971), 257 Ind. 336, 274 N.E.2d 396, 400 *citing Soucie v. State* (1941), 218 Ind. 215, 31 N.E.2d 1018. As in *Mayes v. State* (1974), 162 Ind.App. 186, 318 N.E.2d 811, we

do not believe that allowance of the prosecutor's final argument to the jury has been clearly shown to be prejudicial or a breach of the trial court's discretion in permitting counsel to engage in "adversary advocacy." In light of the overwhelming evidence that Downing did, in fact, possess PCP, we find that any error in the prosecutor's remark was harmless. We feel our holding is buttressed by the fact that the jury apparently chose to believe the testimony of police informant Powell rather than that of Parker.

Finding no reversible error in the trial court, we affirm Downing's conviction.

Hoffman, Staton, JJ. concur.

NOTE — Reported at 381 N.E. 2d 554.