**Ollie ASHBAUGH, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 678S117.**

Supreme Court of Indiana.

Feb. 13, 1980.

William F. Marshall, Dalmbert & Marshall, Columbus, for appellant.

Theodore L. Sendak, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Ollie Ashbaugh was convicted by a jury in Bartholomew Superior Court of second degree murder, Ind.Code § 35–1–54–1 (Burns 1975). This charge arose out of the shooting death of appellant's husband, Kenneth Ashbaugh, at their home on May 13, 1977. Appellant was first charged with voluntary manslaughter, but an alternative count charging second degree murder was later added to the information. Appellant was sentenced by the trial court to an indeterminate term of fifteen to twenty-five years.

Appellant raised alternatively the defenses of insanity, intoxication and self-defense. She presents eight issues for our consideration on this appeal, concerning: (1) whether the trial court erred in granting a motion in limine preventing mention of a dismissed charge; (2) whether the trial court erred in allowing the testimony of two witnesses who allegedly violated a separation of witnesses order; (3) whether appellant was improperly precluded from attempting to impeach one of the State's witnesses; (4) whether the trial court improperly limited the testimony of the court-appointed psychiatrists; (5) whether the trial court erred in not sending both the original and amended information into the jury room; (6) whether the instruction on intoxication was proper; (7) whether the evidence was sufficient to support the conviction; and (8) whether the evidence was sufficient to support the jury's finding of sanity.

I.

On the day the trial was to begin, but prior to the selection of the jury, the State moved to dismiss the voluntary manslaughter count. The trial court granted this motion, and this left only the second degree murder charge standing. The prosecutor then made an oral motion in limine, requesting that the trial court issue an order precluding defense counsel and witnesses from mentioning the previous voluntary manslaughter charge or that the second degree murder charge was an added, amended charge. Record at 316. This motion was granted. Appellant now claims this order prevented her from: (1) questioning prospective jurors as to whether they were aware of the voluntary manslaughter charge or the amendment that occurred; (2) commenting during the opening statement about the amended information; and (3) attempting to impeach the State's witnesses through the use of prior inconsistent statements.

Appellant asserts the original charge and the fact that this charge was amended received attention in the "local newspaper." We note as a preliminary matter that ap-

pellant, in fact, presents *no* evidence of the alleged pretrial publicity. We have merely her bald assertion that the original charge and the subsequent amendment received some treatment in the media. *See Sacks v. State*, (1977) Ind.App., 360 N.E.2d 21. Appellant urges the court's order in limine thus prevented her from attempting to establish that the prospective jurors were exposed to prejudicial pretrial publicity.

This argument is without merit for two reasons. First, it is not clear that the trial court's order did, in fact, apply to the voir dire process. The prosecutor's motion referred to defense counsel and "his witnesses," and the trial court granted the motion without amending its application. There is no evidence that defense counsel did attempt to raise this issue during voir dire; therefore, we do not know if the trial court would have prohibited the questions appellant now claims she wanted to ask.

Second, even if we accept as true appellant's unsupported assertion that the trial court did intend that its order apply to the examination of prospective jurors, we cannot say this was error. We are mindful of Justice Prentice's language in *Robinson v. State*, (1973) 260 Ind. 517, 520–21, 297 N.E.2d 409, 411–412:

"We are aware of the practice, one of long standing in our courts, of lawyers trying their cases by their voir dire examination of the jury. It is so engrained in our state as to have became accepted as tactically proper and necessary. In no sense, however, does it coincide with fair trial standards, among the objects of which are to provide an impartial and unbiased jury capable of understanding and intelligently assessing the evidence. Much time and energy are consumed in interrogating not with a view towards culling prospective jurors because of bias or prejudice but to the end that bias and prejudice may be utilized to advantage and prospective jurors cultivated and conditioned, both consciously and subconsciously, to be receptive to the cause of the examiner. Many excellent lawyers genuinely believe that their case has been determined by the time the jury has been sworn, and they may well be correct. We think this practice is repugnant to the cause of justice and should terminate. We think also that this can best be accomplished by the trial judge's assumption of a more active role in the voir dire proceedings and by exercising, rather than abdicating, his broad discretionary power to restrict interrogation to that which is pertinent and proper for testing the capacity and competence of the jurors."

Appellant makes no showing that she was precluded in voir dire from fully exploring through other means the question of alleged pretrial publicity. Therefore, accepting appellant's assertions, we do not believe the trial court erroneously precluded counsel from entering into a proper area on voir dire.

The trial court also properly applied its order in limine to comments during opening statement and the cross-examination of witnesses. The trial court's order prevented appellant's counsel and witnesses from discussing the previous charge and the amendment. We do not read the prosecutor's motion or the court's order as prohibiting *any* mention of voluntary manslaughter under any circumstances. Appellant does not claim she was prohibited from discussing the crime of voluntary manslaughter during her opening statement as perhaps the more appropriate charge or as a lesser-included offense. Nor does she claim she was prevented from presenting any evidence to support either of these theories.

What the trial court was obviously trying to prevent was a discussion of the fact that appellant was originally *charged* with voluntary manslaughter. Either before or after amendment, the charging instrument was not to be used as substantive evidence of appellant's guilt or innocence. *See, e. g., Ind. Pattern Jury Instructions* 1.05. The trial court correctly observed that the voluntary manslaughter charge had been dismissed and was not directly at issue in the case. A discussion of these pretrial procedural manoeuvres would have been irrele-

vant, pointless and possibly confusing to the jury.

Furthermore, we do not see how refusing to allow defense counsel to use the previous charge to attempt to impeach witnesses by showing an alleged prior inconsistent statement prevented appellant from being able to confront her accusers. Appellant does not explain precisely how the original charging instrument itself could have been the prior inconsistent statement of a witness. A witness' conclusions of law regarding the degree of appellant's culpability would not have been properly admitted for impeachment purposes. Therefore, the trial court did not err in granting the State's oral motion in limine.

## II.

[3] Prior to the presentation of opening statements, the prosecutor asked the court for a separation of witnesses order. Defense counsel objected, arguing that only the defense can make this motion. The court granted the motion in the following manner:

"There's been a motion by the State for separation of witnesses, which has been granted. The witnesses will remove themselves from the courtroom, except for the defendant and one person at the prosecutor's table. And I admonish you not to discuss your testimony either before or after your testimony.

. . . ."

Record at 323. Thereafter, Officers Purcell and Franke were called upon to testify for the State. After establishing through preliminary questions that Officers Purcell and Franke had discussed the case subsequent to the beginning of the trial, defense counsel objected to their testimony and the exhibits placed in evidence through their testimony. Appellant argued that they should not be permitted to testify because they had violated the separation of witnesses order. The trial court overruled appellant's objection and explained its previous order:

"Well I don't want witnesses coming in and testifying and then going out and talking to witnesses who are going to testify.

. . . . .

What the court intended was that witnesses not go out of this courtroom after testifying and talk to potential witnesses about the testimony they had just presented in the court."

Record at 548, 553–54. It appears that everyone, save defense counsel, had understood this to be the meaning of the original order, in spite of the trial court's original misstatement.

[4, 5] Officers Purcell and Franke were properly allowed to testify. Under the trial court's interpretation of its order, Purcell and Franke, in fact, had not violated the separation of witnesses order. Further, even if appellant had been able to show that they did violate the order, this would not have automatically prohibited their testimony. Even if the order is violated, the court, in its discretion, may allow the violating witness to testify. *Buchanan v. State,* (1975) 263 Ind. 360, 369, 332 N.E.2d 213, 219; *Butler v. State,* (1951) 229 Ind. 241, 246, 97 N.E.2d 492, 495. Appellant has failed to show an abuse of discretion by the trial court in permitting Purcell and Franke to testify and admitting into evidence the exhibits introduced through their testimony.

Appellant also argues the trial court erred in prohibiting her counsel from attempting to impeach Purcell and Franke during cross-examination concerning the specifics of their supposed violations of the court's separation of witnesses order. She first asserts that the trial court erroneously granted the State's oral motion in limine, and thereby prohibited defense counsel from raising the separation order question in front of the jury after the court had ruled on the issue outside the presence of the jury. A search of the record reveals that this motion was withdrawn by the prosecutor before the court had a chance to rule on it. Record at 554. Therefore, there is no issue to consider regarding this motion in limine.

[6] In any case, we cannot say the trial court erred in prohibiting this line of cross-examination. Appellant's argument is predicated upon the claim that the two officers did violate the order. Because the trial court properly found that they had not violated the order, the court acted within its discretion in refusing to permit defense counsel to pursue this line of impeachment during cross-examination. Appellant has not shown that her cross-examination was otherwise improperly impeded. This issue is without merit. *Murphy v. State,* (1977) 267 Ind. 184, 194, 369 N.E.2d 411, 416.

### III.

Appellant Ashbaugh next argues that her right to cross-examine Officer Franke concerning a prior statement of Franke's given under oath was improperly curtailed. It appears from the record that Officer Franke testified at appellant's bond reduction hearing. During his testimony at that hearing, he was allowed to refer to a firearms report compiled by an Indiana State Police expert. This report concerned the distance between appellant and her husband when appellant shot him. Apparently, this report contained conclusions which conflicted with statements Officer Franke had obtained in his investigation. It further appears that appellant was attempting to impeach Franke at trial by showing that he had changed some of his conclusions at the bond reduction hearing in light of the firearms report. Defense counsel attempted to do this, however, by bringing out facts and conclusions of the State Police expert which were contained in the firearms report.

[7] The trial court properly sustained the prosecutor's objection to this approach. Officer Franke was not held out at the bond reduction hearing or at trial as a firearms expert. Franke had no first hand knowledge of the matter contained in the report. Moreover, that portion of the report with which appellant had hoped to impeach Franke contained the opinions of a State Police expert, not Franke. Appellant was not prevented from attempting to impeach Franke by showing his prior inconsistent testimony or opinion. Therefore, there was no error here. *See Pulliam v. State,* (1976) 264 Ind. 381, 345 N.E.2d 229; *Duncan v. State,* (1975) 166 Ind.App. 302, 304, 335 N.E.2d 827; *Parr v. McDade,* (1974) 161 Ind.App. 106, 314 N.E.2d 768. *See also Pruitt v. Miller,* (1851) 3 Ind. 16.

[8] Before leaving this issue, we feel compelled to comment on the suspect manner in which this issue was presented to this Court. In appellant's brief, under the "Statement of Facts" heading, counsel purports to quote from the record the questions, objections and trial court rulings which are pertinent to this issue. However, in a number of places, important portions of the record were excluded from counsel's quotation without any indication that these exclusions had been made. These omissions resulted in an incomplete and inaccurate picture of the issue and how it was handled at the trial level. Moreover, these omissions of material information forced this Court to examine the record ourselves to ascertain exactly what took place at trial. We strongly encourage appellate counsel, when portions of the record must be quoted in the brief, to do so carefully and accurately. *See* Ind.R.App.P. 8.2(B)(5). *See also* Code of Professional Responsibility DR 7–102(A)(5).

### IV.

Prior to testimony from the two court-appointed psychiatrists, the prosecutor made an oral motion in limine requesting that defense counsel "be precluded from eliciting or attempting to elicit any testimony from either psychiatrist with regard to their own personal opinion as to whether or not the defendant in this case may or may not have a good self-defense to this crime." Over appellant's objection, the trial court granted this motion. During cross-examination of Dr. Schuster, one of the psychiatrists, defense counsel asked if a person having personality traits like those Dr. Schuster had attributed to appellant would "have reason to fear more than someone in a higher level." The prosecution objected, arguing

that this question related to the issue of self-defense. However, the court noted that the question related directly to what the doctor had testified to on direct examination and was couched in hypothetical terms. This objection was overruled. Without obtaining an answer to the previous question, defense counsel then asked Dr. Schuster if he had an opinion as to whether this defendant felt at the time of the shooting that she was in fear of great bodily harm. The trial court sustained the prosecutor's objection to this question. Appellant argues the trial court erred in granting the motion in limine and sustaining the objection to her question.

[9, 10] It is clear that appellant, by this question, was seeking to establish her defense of self-defense. Whether appellant was acting in self-defense when she shot her husband, however, was a question of ultimate fact for the jury. *Cammack v. State*, (1970) 254 Ind. 637, 641, 261 N.E.2d 862, 864; *Stock v. State*, (1969) 252 Ind. 67, 69, 245 N.E.2d 335, 337. The court-appointed psychiatrists were qualified only to give an opinion as to appellant's sanity. Their purpose in testifying was to provide expert evidence to help the jury determine the question of appellant's sanity. *Hill v. State*, (1969) 252 Ind. 601, 616, 251 N.E.2d 429, 437. Both testified that she was sane when she shot her husband. They were not qualified to give a legal conclusion on the self-defense issue as to the degree of appellant's culpability. *See Simpson v. State*, (1978) Ind., 381 N.E.2d 1229. We find no error in the trial court's refusal to allow defense counsel to raise this question to the psychiatrists.

## V.

[11] Appellant next alleges as error the trial court's refusal to send both the original and amended information into the jury room during deliberations. While this assertion is set forth in the statement of issues, appellant presents no argument on this question. Therefore, this issue is waived. Ind.R.App.P. 8.3(A)(7). *See Cammack v. State*, (1970) 254 Ind. 637, 638–39, 261 N.E.2d 862, 863.

## VI.

[12] Appellant also argues that one of the final instructions given by the court was improper. The court gave the following instruction on the defense of intoxication:

"Under the law of Indiana a temporary mental incapacity which results from being under the influence of (drugs) (alcohol), taken voluntarily, furnishes no legal excuse for the commission of a crime.

However, such temporary incapacity may have produced a state of mind which prevented the defendant from being able to form a specific intent to commit the crime with which she is charged.

If you find that at the time of the crime charged the defendant was suffering from a temporary mental incapacity as a result of being under the influence of (drugs) (alcohol) to such an extent that she could not have formed a specific intention to commit the crime of voluntary manslaughter or any included offense which requires specific intent, then you should find the defendant not guilty. The crimes of second degree murder and involuntary manslaughter do not require specific intent.

Record at 226. Defense counsel apparently objected to the giving of this instruction, but, contrary to Ind.R.App.P. 8.3(A)(7), did not include in the brief his verbatim objection. A search of the record reveals that the objection was based on a belief that second degree murder is a specific intent crime. Appellant contends that this alleged misstatement of the law eliminated intoxication as a defense to second degree murder.

Appellant's argument contains a fatal flaw. A similar issue was presented to this Court in *Kriete v. State*, (1975) 263 Ind. 381, 332 N.E.2d 209. The defendant there was charged with second degree murder. He challenged the sufficiency of the evidence, arguing that the evidence of his intoxication precluded a finding that he had acted purposely and maliciously, as required un-

der the definition of second degree murder. See *Ind.Code* § 35–1–54–1 (Burns 1975). The Court recognized that intoxication could be a defense to a crime of which specific intent is an element. *Eastin v. State*, (1954) 233 Ind. 101, 103, 117 N.E.2d 124, 125. However, the Court expressly recognized in *Kriete* that specific intent is not an element of second degree murder. See *Wilson v. State*, Ind., 374 N.E.2d 45, 49. See also *Hooker v. State*, (1979) Ind.App., 387 N.E.2d 1354, 1359. Thus, the instruction quoted above was a correct statement of the law. The court did not err in giving this instruction.

## VII.

■ Appellant next argues the evidence was not sufficient to support the conviction. She contends there was insufficient evidence to show that an act of appellant caused the decedent's death. The evidence most favorable to the State reveals that appellant Ollie Ashbaugh and her husband Kenneth were returning from the local Moose lodge when they began to quarrel. There was evidence that both had been drinking alcohol at the lodge. Appellant later indicated that the decedent began to hit her as they drove home. This altercation continued after they reached their house trailer. Once inside the trailer, appellant and her husband began to fight again. Apparently one of them produced a rifle and in the ensuing struggle, one shot was fired. The bullet passed through Kenneth Ashbaugh's left arm and into his chest cavity, where it severed the aorta, causing massive hemorrhaging. The decedent Kenneth Ashbaugh then went outside the trailer, and appellant followed him, still carrying the rifle. While some witnesses did see the decedent actually standing up outside, it appears that the decedent fell to the ground shortly after leaving the trailer. Witnesses heard three or four more shots being fired. There was testimony, however, that appellant was deliberately firing the weapon *over* her husband's body into the ground, ostensibly so that no one else would be shot. The pathologist who performed the autopsy testified that when the

decedent was shot, the barrel of the rifle was one or two feet away from his body.

Cora Sisson testified that she looked through her kitchen window and saw appellant standing over her fallen husband. She then heard appellant say: "You get up from there, you son of a bitch, and I'll kill you." Bartholomew County Sheriff Jimmie McKinney testified that, after he had given appellant the *Miranda* warnings, appellant asked how her husband was. McKinney told her that Kenneth Ashbaugh was dead, and appellant replied: "That son of a bitch won't hurt me again."

■ Appellant emphasizes that no one contradicted her version of the incident and that no one saw her shoot the decedent. It is true that much of the evidence was circumstantial in nature. However, circumstantial evidence may be sufficient to sustain a conviction, if there is sufficient evidence from which the jury could have found beyond a reasonable doubt that the defendant committed the act. *Prudential Ins. Co. of America v. Van Wey*, (1945) 223 Ind. 198, 203, 59 N.E.2d 721, 723. *Compare Allbritten v. State*, (1974) 262 Ind. 452, 453, 317 N.E.2d 854, 855. We think the evidence recited above is sufficient to support the jury's finding that appellant caused her husband's death, and that she did so purposely and maliciously.

## VIII.

■ Appellant further asserts the State did not carry its burden of proving beyond a reasonable doubt that appellant was sane at the time of the commission of this crime. Both court-appointed psychiatrists were of the opinion that appellant was sane at the time of the killing. There was, moreover, lay testimony to the effect that appellant was sane. Sheriff McKinney testified that when he talked with appellant shortly after the shooting, appellant was very calm and collected and seemed to know everything that was going on. Appellant's argument essentially asks us to disregard this evidence and focus on testimony concerning the amount of alcohol appellant had con-

sumed. To do so would be to usurp the function of the jury and weigh the evidence ourselves. This we refuse to do. *Jacks v. State*, (1979) Ind., 394 N.E.2d 166, 172; *Lynn v. State*, (1979) Ind., 392 N.E.2d 449, 452; *Hill v. State, supra.* We think there was sufficient evidence from which the jury could have found that appellant Ollie Ashbaugh was sane when she shot her husband.

Finding no error, we affirm the judgment of the trial court.

All Justices concur.