Curtis GRIFFIN, Appellant,

v.

STATE of Indiana, Appellee.

No. 685S239.

Supreme Court of Indiana.

May 28, 1986.

Rick L. Jancha, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Curtis Griffin was tried by a jury and found guilty on two counts of class A robbery. Ind.Code § 35–42–5–1 (Burns 1979 Repl.). At sentencing, the trial court noted amendments to the robbery statute and elected to treat the felonies as class B offenses. Griffin received consecutive sentences of fifteen years and twenty years.

The sole issue raised by appellant is whether the identification evidence is sufficient to sustain his convictions. The State requests that this Court consider whether the trial judge erroneously entered appellant's convictions as class B felonies.

These are the facts which tend to support the trial court's judgment. On November 23, 1983, Dewey Nodine, age 85,

and Paul Stafford, age 60, were robbed by three men: appellant, co-defendant Charles Griffin, and accomplice Anthony Tobar. Nodine and Stafford were shopping for automobile parts. They stopped at a second-hand store where Nodine bought a pair of flashing lights for his wrecker from Tobar. When Nodine paid for the lights, he separated the dollar denominations in his wallet, which contained several hundred dollars. Apparently, Nodine mentioned that he was looking for car doors.

Nodine and Stafford then drove to a second automobile store where co-defendant Charles Griffin and accomplice Tobar soon appeared. In the parking lot Tobar told Nodine that he would take him to a place where he could purchase car doors. Tobar accompanied Nodine and Stafford in their truck to an alley where they were to meet co-defendant Griffin. Nodine got out of the truck and proceeded to walk toward a garage which he presumed contained the car doors. As he walked toward the garage, appellant hit Nodine on the head four or five times with a two by four piece of wood. Appellant then took five to six hundred dollars from Nodine. This injury required stitches and several months of recuperation. It also impaired his vision and hearing.

Appellant then hit Stafford's back three times with the two-by-four and pointed a gun at Stafford, threatening to kill him if he did not turn over his money. Appellant took approximately one hundred forty dollars from Stafford. As a result of this injury, Stafford sustained bruises on his back, had difficulty walking, and suffered severe pain for six weeks.

Tobar and appellant went to the Davis home shortly after the robbery. Jerry Davis testified that Tobar wanted to find Charles Griffin so that "he can get the money split up." Appellant told Davis that he had beaten up an old man. Davis also encountered appellant shortly thereafter by a neighborhood trash can; he had a black wallet in his hand and a dealer's license which had a picture of an old man with white hair.

Stafford identified appellant in court as the man who hit and robbed him. Tobar identified appellant as the man who hit Nodine.

### I. Sufficiency of the Identification Evidence

Appellant's argument that the identification evidence is insufficient to sustain his convictions is predicated upon four claims:

(1) One victim could not identify appellant until the trial;

(2) Accomplice Tobar's testimony was inherently improbable because he had a plea agreement with the State;

(3) Two witnesses' testimony was based upon ulterior motives, and

(4) Appellant presented uncontroverted alibi evidence.

### A. Victim's Identification

Griffin maintains that Stafford's in-court identification was tenuous and suspect because he was unable to identify appellant from photographic arrays before trial and because defendant was the only black man present in the courtroom when Stafford positively identified him.

Stafford had positively identified Tobar and Charles Griffin from a photographic array held two days after the crimes were committed. On September 10, 1984, ten months after the crimes were committed, Stafford was shown another photographic display at the prosecutor's office. At this time Stafford identified a man who looked like his assailant. The man whom Stafford chose was not the defendant. When defense counsel questioned why Stafford was not able to identify defendant until the trial, Stafford explained that he was not satisfied with the photographs, that this was his first experience with photographic arrays, and that there was a noticeable difference between viewing photographs and seeing the subject in person.

A victim's inability to identify the defendant on previous occasions bears only upon the weight to be accorded the in-court identification, not its admissibility. *Allen*

*v. State* (1982), Ind., 431 N.E.2d 478. The jury was presented with information which might discredit Stafford's identification, and it was solely responsible for determining the weight and credibility to be attached to his testimony.

Griffin also claims that Stafford's identification was unduly suggestive because the only black man in the courtroom was the defendant. There is a degree of suggestiveness which is inherent in all in-court identifications; the practical necessity of having the appellant sit at the defendant's table with defense counsel naturally sets him apart from everyone else in the courtroom. *Emerson v. State* (1970), 253 Ind. 515, 255 N.E.2d 532. This type of suggestiveness cannot be avoided because the defendant has a constitutional right to attend his trial and confront the witnesses against him.

Whether a particular identification procedure rises to that level of suggestiveness which constitutes reversible error must be determined from the context of the case. *Emerson v. State* (1974), 261 Ind. 436, 305 N.E.2d 435. Suggestiveness is proscribed only when it can reasonably be avoided under the circumstances. Absent any extraordinary effort to single out the defendant at trial, an in-court identification is not unduly suggestive where the witness is firm in his identification of his assailant. *Holland v. State* (1980), 274 Ind. 382, 412 N.E.2d 77.

In the case at bar, the only element of suggestiveness was the appellant's position at the defense table when he was identified by Stafford. While appellant was the only black man in the courtroom, due process does not require that a victim identify his assailant from a courtroom containing people of similar physical characteristics. Moreover, Stafford was not the only witness to identify appellant. Appellant was also identified by his accomplice. A single eyewitness' testimony is sufficient to sustain a conviction. *Anderson v. State* (1984), Ind., 469 N.E.2d 1166, *cert. denied* (1985), —— U.S. ——, 105 S.Ct. 1220, 84 L.Ed.2d 361.

### B. Accomplice Testimony

Tobar positively identified Griffin in court as one of the men whom he helped rob Nodine and Stafford and as the man who hit Nodine. Appellant maintains that Tobar's testimony placing defendant at the scene of the crime was unworthy of belief because Tobar had received a reduced sentence in return for his testimony.

Tobar was charged with two class A felonies for his participation in this robbery. Charges for an unrelated forgery offense were also pending. Pursuant to a plea agreement, Tobar pleaded guilty to two class B felonies and agreed to testify against Charles Griffin. The State dropped the forgery charge and the court imposed concurrent sentences of fourteen years. Tobar admitted that he hoped his testimony at appellant's trial might induce the prosecution to recommend to the judge that his sentence be reduced further. However, Tobar gave a statement to the police which implicated appellant and his brother months before Tobar entered into the plea agreement.

An accomplice is a competent witness and a defendant may be convicted on the uncorroborated testimony of an accomplice. *Davis v. State* (1985), Ind., 472 N.E.2d 922. The consideration which an accomplice has received for his testimony is a factor which attaches to the weight of his testimony and not to its admissibility. *Moore v. State* (1978), 268 Ind. 519, 376 N.E.2d 1129. However, the testimony of an accomplice should be highly scrutinized and any plea agreement must be fully disclosed to the trier of fact. *Kelley v. State* (1984), Ind., 460 N.E.2d 137. When, as in this case, the circumstances which may have contributed to his willingness to testify have been disclosed during the trial, the credibility and weight to be accorded such testimony is a matter for the trier of fact.

### C. Ulterior Motives of Witnesses

Griffin claims that the testimony of Edna and Jerry Davis should be discounted be-

cause they had ulterior motives. Jerry Davis admitted during cross-examination that he was angry with defendant's brother, Charles Griffin, because Charles dated his sister while married to another woman.

The Davis' testimony served to refute appellant's alibi defense and to implicate appellant in the robbery. Both Edna and Jerry Davis identified appellant in court as the man who was at their home on the day of the robbery.

During cross-examination, Jerry admitted that he had a close relationship with his sister and that he did not like to see anyone hurt her. However, admitting that he would like the chance for retribution against Charles Griffin, he stated that he would not seek it through his brother and that he harbored no animosity toward the defendant. Moreover, Jerry gave a statement consistent with his courtroom testimony prior to learning that Charles Griffin was married while dating his sister.

■ When a jury is aware of a witness' possible motives or bias, it can use the information to assess the witness' credibility. *Shields v. State* (1986), Ind., 490 N.E.2d 292.

### D. Evidence of Alibi

Appellant claims that his fiancee and his sister presented uncontroverted evidence that he was out of the state when the crimes were committed. He maintains that the uncontroverted evidence supporting his alibi combines with the otherwise insufficient evidence of identification to establish that the State has failed to prove identification beyond a reasonable doubt.

■ The credibility of the alibi testimony is also a matter for the jury to determine. Alibi evidence is merely rebuttal evidence aimed at negating the State's evidence identifying the defendant as the person who committed the crime. *Merritt v. State* (1978), 267 Ind. 460, 371 N.E.2d 382. If the State's evidence is credible, the jury

may disbelieve the defendant's evidence on alibi. *Thomas v. State* (1982), Ind., 436 N.E.2d 1109. The jury apparently did not believe appellant's "uncontroverted" evidence that he was in another state at the time the crime was committed.

### II. Reduction of Felony Class

The State argues that the trial court erred by reducing appellant's robbery convictions from class A to class B felonies.

On January 10, 1984, the State filed an information alleging commission of two class A robberies. It alleged that the robberies occurred on November 23, 1983, and that bodily injury was inflicted upon the two victims. On December 5, 1984, prior to voir dire, defense counsel requested that the information be amended to class B felonies. The trial court denied this motion. On December 12, 1984, the jury found defendant guilty of robbery as charged in the information and judgment was entered accordingly.

On January 31, 1985, the State filed a memorandum to support its request that the defendant be sentenced as a class A felon. A sentencing hearing was held the following day. Defense counsel argued that the felonies should be reduced to class B because an amendment to the robbery statute had reduced a robbery which resulted in bodily injury to a class B felony.[1] Robbery which resulted in bodily injury was a class A felony at the time the crime was committed, but prior to the trial the legislature amended the statute. P.L. 186, Acts 1984. The court elected to treat both robberies as class B felonies pursuant to its interpretation of the applicable case law.

■ This Court has consistently held that certain procedural mechanisms must be followed to preserve an issue for appellate review. Failure to abide by these procedural rules has often resulted in waiver of the issue. In this case, the State did object to the trial court's decision to reduce

---

1. Robberies resulting in "serious bodily injury" remain class A felonies. Ind.Code § 35–42–5–1

(Burns 1985 Repl.).

appellant's convictions to class B felonies. However, the State did not pursue this issue any further until it raised the question in the brief it filed in Griffin's appeal. One may not piggyback an issue on his opponent's appeal. In order to preserve the issue of an erroneous sentence for appellate review, the State is required to file a written motion to correct the sentence, accompanied by a memorandum of law which specifically delineates the defect in the original sentence. Ind.Code § 35–38–1–15 (Burns 1985).

Judgment Affirmed.

GIVAN, C.J., and DeBRULER, PIVAR-NIK and DICKSON, JJ., concur.