## CAMMACK v. STATE OF INDIANA.

[No. 1069S246. Filed September 15, 1970. No petition for rehearing filed.]

*Don R. Money,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

HUNTER, C.J.—This is an appeal brought by appellant, Henry Cammack, from a conviction in the Marion Criminal Court, Division Two, of the crime of assault and battery with intent to commit a felony. Trial was had before a jury and upon a verdict of guilty, judgment was entered against appellant, sentencing him to the Indiana Reformatory for not less than one (1) nor more than ten (10) years.

Appellant filed a timely motion for a new trial accompanied by memorandum in which he alleged that:

(1) The verdict of the jury is not sustained by sufficient evidence, and

(2) That the verdict of the jury is contrary to law.

It is from the overruling of the said motion for new trial that appellant is appealing, it being his sole assignment of error.

Before discussing the merits of this appeal, we are once again compelled to note the failure of counsel for appellant to file a brief which complies with Rule AP. 8.3A(7). That rule requires:

"(7) An argument. Each error assigned in the motion to correct errors that appellant intends to raise on appeal shall be set forth specifically and followed by the argument applicable thereto. If substantially the same question is raised by two [2] or more errors alleged in the motion to correct errors, they may be grouped and supported by one [1] agrument. *The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review . . . Any error alleged in the motion to correct errors not treated as herein directed shall be deemed waived."* (our emphasis)

Nowhere in appellant's brief can an argument section be found. There is a section entitled "Brief Argument Without Authorities" which counsel for appellant evidently intends to be the summary of his argument as required by AP. 8.3A(6). However the succeeding section which should, according to our rules, be the argument section is entitled "Authorities Relied Upon" and contains nine pages of quotations from two cases: *Miller* v. *State* (1960), 240 Ind. 706, 166 N. E. 2d 338, and *Heglin* v. *State* (1957), 236 Ind. 350, 140 N. E. 2d 98.

The appellant's brief in this case is identical in form to the brief filed by the very same counsel in the case of *McDougall* v. *State* (1970), 254 Ind. 62, 257 N. E. 2d 674. This Court noted the following:

"Rule AP 8.3 (A) (6) requires a 'summary of argument.' Appellant's summary is in effect the only argument in the brief. It has been entitled 'Brief Argument Without Authorities.' *It is followed by a section entitled 'Authorities Relied Upon' which consists merely of seven pages of quotations from three cases, without the slightest attempt to relate these cases to the issues presented.* In short, the brief

is lacking a cogent argument as required by Rule AP 8.3 (A) (7). Any tendency toward liberality in construing the rules of practice and procedure should not be treated as a license to ignore plain and concise rules of practice." (our emphasis) 257 N. E. 2d at 676.

The failure to comply with Rule AP 8.3 (A) (7) is more than a mere procedural defect; it is a far more serious omission. Counsel for appellant has in effect made no attempt to offer an argument on appellant's behalf. Without an argument section in appellant's brief, there is in reality no appeal. Although this court has said that where possible it will decide an appeal on its merits, the non-compliance with the rules of appellate procedure by counsel for appellant in this case is inexcusable. The liberal use of a Zerox machine can never be a substitute for the work product of a conscientious attorney. However, in view of the question presented, namely the sufficiency of the evidence, we will proceed to decide this appeal on its merits.

The evidence most favorable to the state reveals the following: on May 11, 1968, at approximately 10:50 P.M. the victim, Freddie Tolliver, and a companion were riding in Tolliver's vehicle in downtown Indianapolis. As they proceeded on 25th street in that city one Alonzo Douglas pulled up behind them and began blowing his horn. Tolliver pulled over to the side of the road and stopped and Douglas did the same. It seems that Douglas had developed a flat tire and, being without a lug wrench, sought assistance from Tolliver.

The three men tried to remove the tire and not being able to do so, the victim then offered to drive Douglas and his female companion home. Douglas declined the offer wishing instead to remain with the vehicle. He suggested that the two men take the girl home and they did so. She was Betty Jean Cammack, wife of appellant. Witnesses testified that Mrs. Cammack was intoxicated when Tolliver picked her up. She rode alone in the back seat of the victim's car when he took her home.

Upon arrival at the appellant's house at approximately 11:45 P.M., appellant was standing on the sidewalk, and the victim told him that his wife was asleep in the backseat of the victim's car. Appellant's mother-in-law who was present at the time, thanked the victim for bringing her daughter home, and asked appellant to carry her into the house. He refused.

Appellant asked the victim what he was doing with his woman in the car. The victim stated that he had brought her home because she wasn't feeling well and that appellant should be grateful to him for his service. Appellant replied that since he brought her home he should also take her into the house. During the ensuing altercation, a man identified as John carried appellant's wife inside.

The victim then proceeded to get back into his car to leave when appellant went around to the other side and exchanged further words with him. The victim then got out of his car and stated: "Man, will you get off my back? We'll fight a fair fight. Will you fight it out? I ain't got no knife or weapon have you?" Defendant replied "No, I ain't got not knife, no weapon. We'll fight it out fair."

The two men started fist-fighting in the street for about five (5) minutes. Appellant then drew a knife he had in his possession. The victim acknowledged that appellant had a knife and stated that he had to have something with which to defend himself. Another witness, Millie Jackson, who had attempted to separate the two men, saw that appellant had a knife in his possession. In fact she testified that she saw the defendant with a knife before the fight started.

As the victim walked behind a church at that location and picked up an object, the appellant ran for him and the fighting continued. The scuffling lasted another minute at which time the victim slipped to the ground and appellant fell on top of him.

The victim then asked for help as he was bleeding heavily. Help was then summoned but he was dead by the time an

ambulance arrived. An autopsy revealed that he died from a stab wound at the base of the right neck. In addition there were four (4) other wounds on his body—one three-eighths (⅜″) of an inch abrasion or scrape mark below the right eye and three on his back.

In his brief argument without authorities, appellant argues that he was acting in self-defense. One of the investigating police officers stated that there was a long iron pipe recovered somewhere in the area of the fight. It is appellant's contention that he was acting in self-defense in defending himself from an attack by the victim with this pipe. He states that:

"The actions of the appellant would certainly justify self-defense, even to the point of taking a life."

The issue of self-defense is a question of ultimate fact for the jury. *Lytle* v. *State* (1968), 251 Ind. 413, 241 N. E. 2d 366; *Swift* v. *State* (1961), 242 Ind. 87, 176 N. E. 2d 117. The jury is not compelled to accept appellant's testimony that he acted in self-defense. *Lytle* v. *State, supra; Bullard* v. *State* (1964), 245 Ind. 190, 195 N. E. 2d 856. It is the jury's function and not this Court's to weigh the evidence and determine the credibility of witnesses. *Cowherd* v. *State* (1970), 253 Ind. 693, 256 N. E. 2d 679; *Stock* v. *State* (1966), 247 Ind. 532, 219 N. E. 2d 809. The determination that appellant acted in self-defense in this case depended on the veracity of his own testimony on the witness stand. The jury chose not to believe appellant's story in this regard and we see nothing in the record which compels us to hold otherwise.

Furthermore, it is well-settled in Indiana that in order for one to invoke the defense of self-defense when chargd with a homicide [in this case appellant was charged with manslaughter] he must be (1) without fault; (2) in a place where he has a right to be; and (3) in real or apparent danger of death or great bodily harm. *Hightire* v. *State* (1966), 247 Ind. 164, 213 N. E. 2d 707; *Bullard* v.

*State, supra.* In this case we think that the jury could have found from the evidence and the reasonable inferences deducible therefrom that appellant started the fight with the victim. The fact of appellant's fault in instigating the combat would we believe, preclude him from raising the defense of self-defense.

In view of the foregoing we conclude that the verdict of the jury is sustained by sufficient evidence and the judgment thereon is therefore not contrary to law. The judgment should be affirmed.

Judgment affirmed.

Arterburn, Givan and Jackson, JJ., concur. DeBruler, J., concurs in result.

NOTE.—Reported in 261 N. E. 2d 862.