LLOYD LAYMON MARTIN *v.* STATE OF INDIANA.

[No. 772S98. Filed June 5, 1973. Rehearing denied July 17. 1973.]

*Ferdinand Samper, Ferd Samper, Jr.,* Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

Givan, J.—Appellant was charged by indictment with the offense of second degree murder. Trial by jury resulted in a verdict of guilty as charged. Appellant was sentenced to the term of fifteen to twenty-five years.

The record discloses the following facts:

On November 12, 1971, the appellant and the decedent, Dunbar, together with one John Byrne and one Carol Doolittle, drove to Bloomington, Indiana, where they visited several taverns and bought some beer to take with them on their return trip to Indianapolis. Upon arriving in Indianapolis, they first left Miss Doolittle at her home, then drove to the appellant's apartment. During the trip, the appellant and Dunbar had engaged in an argument. When they arrived at appellant's apartment, the appellant and Byrne got out of the automobile and walked a distance, where they stopped and had a conversation. During their conversation, Dunbar started throwing beer bottles in their direction from the car and continued to argue in a loud manner. The appellant told Byrne that Dunbar was making him angry, and that he was "going to kick Dunbar's ass." Appellant then approached Dunbar, who picked up another beer bottle and broke it on the fender of the car. Appellant took a knife from his pocket. In the ensuing fight between the men, Dunbar received a cut across the back and a stab wound in the chest, which penetrated his heart. After being stabbed, Dunbar retreated from the fight and collapsed. The appellant and Byrne carried Dunbar into appellant's house, then took him to the hospital, where he was declared dead.

On the way to the hospital, Byrne and the appellant decided they would tell police officers that four negroes had jumped them when they arrived in the parking lot at the apartment, and that Dunbar was stabbed in that encounter. Each man told such a story to the police officers. However, the following day they told police officers the truth. In the meantime, the appellant had given his knife to his father, who had taken

it to Linton. The police officers recovered the knife from appellant's father.

At the beginning of appellant's trial, it was stipulated that the appellant did kill David Dunbar, and that Dunbar died from a mortal wound inflicted by a knife held in the hands of the appellant.

Appellant first claims the trial court erred in denying his motion for discharge in that he claims he had not been brought to trial within fifty judicial days from the date of making a motion for early trial pursuant to IND. RULES OF PROC., Rule CR. 4(B). However, the record discloses that following the making of his motion for early trial, the appellant was arraigned, and although his retained attorney was not present at the arraignment, the trial court appointed two attorneys to represent the appellant at that proceeding. The record further discloses that the court specifically questioned the appellant as to whether or not he wanted an early trial. Appointed counsel asked the appellant if he wanted an early trial or if he wanted to wait to talk to Mr. Samper. The appellant stated that he wished to wait for Mr. Samper. Whereupon, the court advised the appellant he would set the matter for trial "in due course," and that if appellant wished an earlier date he should advise the court and he would be accommodated. These actions by the appellant at his arraignment can only be interpreted as a voluntary waiver of his right to an earlier trial setting. *Cody* v. *State* (1972), 259 Ind. 570, 290 N. E. 2d 38, 34 Ind. Dec. 261; *Randolph* v. *State* (1954), 234 Ind. 57, 122 N. E. 2d 860. Appellant stood before the court within the period of fifty judicial days of the filing of his motion for a speedy trial. At that time the court was faced with the dilemma of the absence of appellant's retained counsel and the need for setting the case for trial. Under those circumstances, the court could do no more than inquire of the appellant himself as to what he desired in the way of a trial setting. The fifty day rule was adopted to insure that an accused would

not be held for an unreasonable period, unless, of course, he himself chose to extend that period. In the case at bar, the purpose of the rule was well served when appellant was, in fact, brought before the court and permitted to exercise his free choice of a trial setting. We see no error in the manner in which the trial court handled this situation.

Appellant next claims the trial court erred in refusing to give his Tendered Instruction No. 5, which reads as follows:

"Real danger of death or great bodily harm, or such apparent danger as causes the defendant in good faith to fear death or great bodily harm will justify killing, and the question of apparent danger is to be determined from the circumstances as they appeared to the defendant at the time the fatal wound was inflicted. In the excitment of the moment he is not required to judge these matters with precise calculation."

and his Tendered Instruction No. 6, which reads as follows:

"The right to take life in self-defense is not dependent on the fact that a man of ordinary prudence would under the circumstances apprehend immediate and urgent danger, but on the fact that the accused himself was really and reasonably so impressed by the appearance if such be the fact."

The record does disclose that the court gave its own Instruction No. 22, which reads as follows:

"The Court further instructs you that one person may kill another under such circumstances that the homicide or killing constitute no crime, but is justified by the law. This is known as the law or doctrine of self-defense and may be, and is thus stated for your guidance.

"Whoever, being himself without fault and in a place where he has a right to be, so far as his assailant is concerned, is assaulted, he may, without retreating, repel force by force; and he need not believe that his safety requires him to kill his adversary in order to give him a right to make use of force for that purpose. When from the act of his assailant, he believes, and has reasonable ground to believe, that he is in danger of losing his life or receiving great bodily harm from his adversary the right to defend

himself from such danger or apprehended danger may be exercised by him; and he may use it to any extent which is reasonably necessary, and, if his assailant is killed as a result of the reasonable defense of himself, he is excusable in the eyes of the law. The question of the existence of such danger, the necessity or apparent necessity, as well as the amount of force necessary to employ to resist the attack can only be determined from the standpoint of the defendant at the time and under all the then existing circumstances. Ordinarily one exercising the right to self-defense is required to act upon the instant and without time to deliberate and investigate and under such circumstances a danger which exists only in appearance, is as real and imminent to him as if it were actual.

"A person in the exercise of the right of self-defense must act honestly and conscientiously.

"When all danger and all apparent danger of the loss of life, or of receiving great bodily harm, from the assault of his assailant is at an end and passed, then the right to use force is at an end and should cease. The person exercising the right of self-defense must honestly believe, and have reasonable ground to believe, when he makes use of force to protect himself from an assailant, that at the time he uses the force it is then necessary to do so to protect his life, or to protect his person from great bodily harm.

"One who is in no apparent danger, and who apprehends no danger and who has no reasonable ground for such apprehension cannot kill another and successfully interpose the defense of self-defense."

The instruction which the court did give obviously covers appellant's requested instructions. It is not error to refuse to give an instruction, the substance of which is adequately covered by instructions given. *Sargeant* v. *State* (1970), 255 Ind. 252, 263 N. E. 2d 525, 23 Ind. Dec. 444.

Appellant next claims the trial court erred in refusing to give his Tendered Instruction No. 9, which reads as follows:

"The Court has instructed you on the elements of Voluntary Manslaughter. If you find that the defendant was intoxicated at the time of the alleged killing of the deceased and by reason of such degree of intoxication he could not

formulate the intent to voluntarily kill—then you must find the defendant not guilty of Voluntary Manslaughter."

In the first place, appellant's Tendered Instruction No. 9 does not address itself to the crime for which appellant stood charged, but only the included offense of voluntary manslaughter. It is not error to refuse to give an instruction which would tend to confuse the jury as to the offense charged. See *Madison* v. *State* (1971), 256 Ind. 353, 269 N. E. 2d 164, 25 Ind. Dec. 389. In any event, we find nothing in the evidence in this case which would require reversal because of the failure to give an instruction on degree of intoxication. The appellant himself recited a clear and concise statement as to the events leading up to and immediately following the decedent's death. The appellant himself came to decedent's aid after he had inflicted the mortal wound, and while transporting the decedent to a hospital concocted a story of an attack by others, then proceeded to tell such story to investigating officers. Although there is evidence in this record as to intoxication of the appellant, there was no question raised in appellant's trial as to lack of ability to form intent due to intoxication. The trial court was not bound to instruct the jury on a matter which had not been placed in evidence in the case. *Witherspoon* v. *State* (1972), 258 Ind. 149, 279 N. E. 2d 543, 29 Ind. Dec. 535; *Johnson* v. *State* (1971), 256 Ind. 497, 269 N. E. 2d 879, 25 Ind. Dec. 661; *Bivins* v. *State* (1970), 254 Ind. 184, 258 N. E. 2d 644, 21 Ind. Dec. 444.

Appellant next claims the trial court erred in refusing to permit the jury to take the written instructions to the jury room. Appellant makes a persuasive argument as to why jurors should be permitted to take instructions to the jury room. He readily admits the well established law in Indiana is to the contrary: that is, that the jury should be orally instructed, and that during its deliberations may request the

court to re-read the instructions. The question is purely a matter of procedure with persuasive arguments on both sides of the question. If the law in Indiana is to be changed in this respect, it should be done either by legislative enactment or by rule of this Court. It is certainly not the type of question of such vital import that a case otherwise properly tried should be reversed for the sole purpose of sending written instructions to a jury room. The trial court followed the existing law on the subject and in doing so committed no error.

Appellant next claims there was not sufficient evidence to support the verdict of the jury. Appellant takes the position that the evidence clearly established that he was only acting in self-defense. With this we cannot agree. There was evidence from which the jury could reasonably find that it was the appellant who approached the decedent in a threatening manner. While it is true the decedent was throwing bottles in the direction of the appellant at the time, the evidence is that neither the appellant nor his companion was struck by a bottle, nor did the decedent advance in their direction. Although it is also true that the decedent broke a beer bottle, presumably to use as a weapon, as the appellant advanced, the evidence was such that the jury could logically deduct that such action on the part of the decedent was, in fact, an act in self-defense on his part. In such a factual setting, we will not disturb the finding of the jury to the effect that it was the appellant who was the aggressor. *Cammack* v. *State* (1970), 254 Ind. 637, 261 N. E. 2d 862, 22 Ind. Dec. 628.

We find no reversible error in this case.

The trial court is, therefore, affirmed.

Arterburn, C.J., Prentice, J., concur; DeBruler, J., dissents with opinion; Hunter, J., dissents without opinion.

DISSENTING OPINION

DeBruler, J.—I find I cannot agree with the majority's

treatment of appellant's right under CR. 4(B) and I therefore dissent from that opinion.

This record reveals that appellant filed a motion for early trial on November 24, 1971, which put into effect the fifty day provision of CR. 4(B). This requires the prosecutor to bring appellant to trial within that period unless the court calendar is too congested to do so or appellant himself causes a delay before trial. If appellant is not brought to trial both the rule and case law mandate that he be discharged. *Small* v. *State* (1972), 259 Ind. 349, 287 N. E. 2d 334.

On January 19, 1972, appellant was arraigned in the Criminal Court of Marion County. Appellant's retained counsel was not present, and the court had temporarily assigned counsel for purposes of this proceeding only. The record of that arraignment shows the following exchange:

"THE COURT: Well, feel free to move to set aside the plea if you feel that it is appropriate before you file any motions. Alright. Any preference on trial date?

MR. TAYLOR: Do you want an early trial or do you want to wait until I talk to Mr. Samper?

MR. MARTIN: Wait until you talk to Mr. Samper.

MR. TAYLOR: No your honor.

THE COURT: Alright I will show the matter set for trial in due course. Now if you find afterwards that your client would like to have a trial date earlier than that, let me know privately and I will try to accommodate you on the day."

Appellant filed his Motion for Discharge on February 7, 1972, and, after a hearing on the motion, the trial court overruled it on the grounds that appellant had waived his right to an early trial at the January 19th arraignment. The majority opinion affirms that decision.

I do not believe that the exchange set out above can be construed as a waiver. We need not decide at this juncture which standard of proof we would require to show an ade-

quate waiver of a CR. 4(B) early trial right. If we were to consider this right a fundamental constitutional right we would require the State to overcome a basic presumption against a waiver and show that it was made voluntarily, knowingly, intelligently and with full awareness of its consequences. *Johnson* v. *Zerbst* (1938), 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461; *Nacoff* v. *State* (1971), 256 Ind. 97, 267 N. E. 2d 165; *Mims* v. *State* (1970), 255 Ind. 37, 262 N. E. 2d 638. However, I do not believe there is any need for us to decide if we should require this higher standard of proof or whether we might accept the less stringent standard accorded to other rights since, in my opinion, the exchange at the arraignment cannot be deemed a waiver under any standard.

The appellant clearly asserted his rights to an early trial by filing his notice in November. A trial judge's question concerning a preference for trial date cannot be reasonably construed to be calling for a decision on whether or not appellant wished to pursue his CR. 4(B) rights, nor can appellant's response that he would want to talk to his lawyer be deemed a waiver of any rights created by his previous notice. It should be pointed out also that in this situation we cannot indulge in the assumptions that arise when appellant is represented by counsel and there is a failure to assert a right, which is then construed as a waiver of that right. Appellant here had no opportunity to consult with either his retained or appointed counsel. Furthermore since the counsel at the arraignment was appointed for such a short period and only for a particularly perfunctory proceeding a distinct possibility exists that counsel was not even aware that a CR. 4(B) notice had been filed.

Since there is nothing in this record to indicate that appellant caused a delay during the fifty days of the CR. 4(B) period, or to demonstrate that a congested court calendar prohibited the prosecutor from bringing appellant to trial, and because I cannot conclude that the exchange at the arraign-

ment can be deemed a waiver under any standard, I must dissent from the majority.

NOTE.—Reported in 296 N. E. 2d 793.