**Grace SMITH, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1-1279A338.**

Court of Appeals of Indiana,
First District.

April 22, 1980.

Rehearing Denied May 13, 1980.

Gregory D. Ball, Public Defender, Richmond, for defendant-appellant.

Theodore L. Sendak, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Grace Smith (Smith) is appealing from her conviction by jury of battery, a class C felony, and from a six and one-half year sentence to the Indiana Women's Prison.

## FACTS MOST FAVORABLE TO THE STATE

Justin Funk (Funk) and Sally Ritchey (Ritchey) were neighbors of Smith in Richmond, Indiana, and all resided in a neighborly fashion prior to May 3, 1978. Shortly before this date Funk and Ritchey moved to Modoc, Indiana, and in the process of moving agreed to sell Smith their refrigerator for $10.00. Funk and Ritchey decided to collect either the $10.00 or the refrigerator from Smith on May 3, 1978, and between 8:30 and 9:00 p. m., together with Karen Wallace (Wallace), Mary France (France), and James Shonkwiler (Shonkwiler), drove to the small apartment building where Smith resided. Funk and Wallace proceeded to visit another friend, Fred Diamond (Diamond), who lived in an apartment above and to the rear of Smith's; Ritchey and France went to Smith's for the $10.00. When Ritchey asked Smith for the money or the refrigerator, Smith denied owing her anything and slammed the door in Ritchey's face. Ritchey kicked the door and turned to walk toward Shonkwiler and his car. Smith burst from the house, attacked Ritchey from the rear, and they wrestled momentarily on the ground. France ran to get Funk and Wallace from Diamond's; they arrived in time to see Smith and Ritchey "facing off" on the sidewalk. Ritchey's hair and clothing were dishevelled,

and she had been scratched. Smith went back into the house saying that she could "lick" Ritchey but not Funk. Funk knocked at Smith's door to find out why Smith had beat up Ritchey. Willie Madden answered the door, and Funk stepped inside. Smith ordered Funk out of her house and came from the back of her apartment with a glass of yellowish liquid in her hand. Funk stepped back out onto the porch and Smith followed him, calling for Ritchey to come back up onto the porch. Wallace suggested to Funk that they leave and settle the debt in court. Smith asked Wallace what she had to do with the matter; Wallace replied, "Nothing." Smith swore at all of the parties, called for Ritchey to come back, and then threw the liquid from the glass at Wallace, Funk, and France. Both Funk and Wallace screamed from burning sensations in their eyes and on their faces. Neighbors called police who were dispatched to the Smith residence for a "fight in progress," but the disturbance was over when the officers arrived. Funk was treated at the Richmond hospital emergency ward for burns and released. Wallace was also given emergency medical treatment at the Richmond hospital, but then was transferred the same night to the Indiana University Medical Center in Indianapolis where she was hospitalized for four (4) days. She suffered second degree burns to her eyes, and at the time of trial the vision in her left eye was limited to perception of light or darkness only. The prognosis was that her vision would never improve, but could deteriorate if the scarred cornea were to perforate.

## ISSUES

Smith raises the following issues as grounds for reversal of her conviction:

1. The "reasonable force" standard of IC 35–41–3–2(b)[1] is unconstitutionally vague, has not been defined by the legislature, and in fact defies definition when read in the context of the statute.

2. The battery statute, IC 35–42–2–1,[2] must be read together with the defense of the dwelling statute, IC 35–41–3–2(b), in order to define the crime of battery; thus, the jury rather than the legislature defines the crime of battery.

3. Refusal to give Smith's proposed instruction number 3 resulted in an inadequate instruction to the jury on Smith's right to defend her curtilage and to be afforded great latitude in her choice of force.

4. The "reasonable force" requirement of IC 35–41–3–2(b) offends the equal protection requirements of the Indiana and Federal Constitutions.

5. The codification of Smith's premises defense, IC 35–41–3–2(b), is so literally defective as to invite persons to be ignorant of the law.

6. It was error for the trial court to overrule Smith's objection to the Prosecutor's use of two (2) prior theft convictions as impeaching evidence.

7. It was error for the trial court to admit into evidence over Smith's objection three (3) photographs of Smith's home which had been taken months after the incident charged.

8. The evidence was not sufficient to prove beyond a reasonable doubt that Smith was not engaged in the defense of her dwelling or premises pursuant to IC 35–41–3–2(b).

## DECISION

All eight of appellant's arguments are unconvincing. We affirm.

1. "A person is justified in using reasonable force, including deadly force, against another person if he reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on his dwelling or curtilage." IC 35–41–3–2(b).

2. "Battery—A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery . . . .

(3) A class C felony if it results in serious bodily injury to any other person . . . ." IC 35–42–2–1.

*Issues One, Two, Four, and Five*

Because the legislature does not define the term "reasonable force" with reference to IC 35–41–3–2(b), the defense of the dwelling statute, appellant finds three constitutional grounds for setting aside her conviction. We shall discuss the constitutional questions as raised in Issues One, Two, Four, and Five of her brief as a group.

■ In Issues One, Two, and Five appellant's basic contention is that IC 35–41–3–2(b) if unconstitutionally vague, and in Issue Four she contends that it violates the equal protection requirements of both the Indiana and United States Constitutions. While we can appreciate counsel's creative approach to the law, it would appear that he has at least in Issue Two confused the elementary distinction between a crime and a defense, a distinction which he later recognizes and asserts as his reason for not raising the question of the statute's constitutionality by filing a motion to dismiss pursuant to IC 35–3.1–1–6(a)(3). It is clear, as the State points out, that in Indiana the method which a defendant in a criminal case should use to challenge the constitutionality of the statute defining the crime with which she is charged should be by means of a written motion to dismiss filed prior to arraignment and plea and accompanied by a memorandum specifically outlining the legal issues involved. *Johnson v. State*, (1977) Ind.App., 367 N.E.2d 25; IC 35–3.1–1–6(a)(3); IC 35–3.1–1–4(b). The method to be used in challenging the constitutionality of a statute defining a defense, however, is not so clear. Appellant's use of the motion to correct errors to spell out her objections to the trial court's refusal to give a tendered instruction is certainly one method. An objection to the court's instructions actually given at trial and further argument in the motion to correct errors on this point would be another. Because the function of this court on appeal is to review "the rulings of the trial court involving questions of law properly saved below and shown by the record"[3] and because the burden of overcoming the constitutionality which attaches to all statutes "includes providing a record which makes the claimed constitutional defects apparent,"[4] this court cannot be expected to find that the presumption of constitutionality was overcome unless the record is factually *and legally* complete. *Board of Commissioners of Howard County v. Kokomo City Plan Commission*, (1975) 263 Ind. 282, 330 N.E.2d 92. While it is true that appellant hinted at the constitutional dimension of the vagueness and equal protection issues involved in the "reasonable force" requirement of IC 35–41–3–2(b) in her motion to correct errors, the issues were raised only tangentially as error upon the court's failure to give appellant's tendered instruction No. 3. Appellant did not even object at trial to the court's own instructions including the verbatim citing of IC 35–41–3–2(b) or the court's definition of reasonable force. Appellant's argument that she could not have been expected to do so because it was the only defense she had is unconvincing. Because this was her only defense, all the more reason she should have availed herself of every possible method to have her version used. Appellant's failure to object to the manner in which the defense was ultimately stated unfortunately precludes the record below from the completeness necessary for an adequate review of the issues raised in One, Two, Four, and Five, except as they are included in Issue Three.

*Issue Three*

Appellant contends that in refusing to give her tendered instruction No. 3 the trial court erred by failing to instruct the jury adequately on her right to defend her premises.[5] Appellant further contends that since

---

3. *Ellwanger v. State*, (1932) 203 Ind. 307, 311, 180 N.E. 287, 289.

4. *City of Hobart v. Town of Merrillville*, (1980) Ind.App., 401 N.E.2d 726.

5. Appellant's tendered instruction No. 3, omitting citations to authority, reads as follows:

"You are instructed Indiana law provides that a person is justified in using reasonable force, including deadly force, against another person if he reasonably believes that the

the trial court did not advise the jury that appellant was "afforded great latitude in the use of force" to defend her property against trespassers, the court's instruction on reasonable force "was so circular as to furnish no definition at all."

To determine whether any error has resulted from the refusal to give a tendered instruction, we must consider three issues: (1) whether the tendered in-struction is a correct statement of the law, (2) whether there is evidence in the record to support the giving of the instruction, and (3) whether the substance of the tendered instruction is covered by other instructions which were given. *Davis v. State*, (1976) 265 Ind. 476, 355 N.E.2d 836; *Stowers v. State*, (1977) 266 Ind. 403, 363 N.E.2d 978. Furthermore, all instructions are to be read together and construed as a whole. *Hol-*

force is necessary to prevent or terminate the other person's unlawful entry of or attack on his dwelling or the premises upon which the dwelling stands. This is because a person's home or dwelling is a place of refuge in which she may expect to be free of attack. Consequently, one is justified in using any reasonable force, and when one is personally attacked even use deadly force, to repel in-trusions within the dwelling or upon the premises. This is true even though the inva-sion may amount to merely a simple assault. Indeed, in defense of his property one is enti-tled to initiate the struggle, *i. e.*, strike the first blow, and not be at fault in the law. A person defending his property is afforded great latitude in the use of force.

You are further instructed that Grace Smith's front porch is part of her premises, upon which that right to defense can arise.

In considering the beliefs of the person using the force in his own home, it is proper to look to the situation as it would reason-ably appear to the person being attacked as to what force would be necessary to resist attack as determined under all existing cir-cumstances, keeping in mind that it is not necessary to flee from his own home to avoid a fight thrust upon him, and that in defense of one's property a person may initiate the struggle and not be at fault in the law."

The court's instruction No. 5 on the issue of defense of dwelling reads

"The defendant has raised the defense of defense of her dwelling or premises in this cause and therefore the State of Indiana, in addition to proving all of the elements of any offense charged, must prove beyond a rea-sonable doubt that the defendant was not engaged, in the manner recognized by the law, in defense of her dwelling or premises in the commission of any of the acts with which she is charged.

The defense of defense of a dwelling is defined by a statute of the State of Indiana as follows:

'A person is justified in using reasonable force, including deadly force, against another person if he reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on his dwelling or curtilage.'

A trespass is an unlawful entry and occurs when a person enters the property of another when the entry is not authorized either spe-cifically or by implication by the owner or occupier of the property or someone on his behalf; or occurs when someone refuses to leave the property of another when requested to do so.

You are further instructed that reasonable force which a defendant may employ and initiate, as the same is used in the aforemen-tioned statute, is that force which reasonably appears to be reasonably necessary under all the circumstances of the particular case to repel the attack or unlawful entry, if any, defended against, and force greater than such reasonable force reasonably necessary under all the circumstances cannot be legally re-sorted to and excused under the defense of a person's dwelling or premises.

Reasonable belief as the term is employed in the above statute means such belief as an ordinary reasonable person would possess under all the existing circumstances and as viewed from the perspective of such person within the total set of circumstances existing in the particular case. Reasonable belief does not require that the danger perceived have actually existed but only that it was reasonably perceived as existing under all the circumstances including any particular knowledge possessed by the defendant. However, the reasonableness of the belief must be tested from the standpoint of a per-son of reasonable sensibilities, control, and perception and not from the standpoint of a person having unreasonable sensibilities, or being unreasonably excitable, or unreasona-bly lacking in perceptive abilities.

You are further instructed that a person may not use force against another person and claim the defense of defense of a dwell-ing or premises if in fact there has been no attack on or unlawful entry of such person's dwelling or premises by such other person, or if any such attack or unlawful entry, al-though occurring initially, has in fact ceased, and a reasonable person under all of the circumstances would have perceived such at-tack or unlawful entry to have ceased, prior to the time that force purportedly in defense of such dwelling has been resorted to."

land v. State, (1976) 265 Ind. 216, 352 N.E.2d 752; *Kelsie v. State*, (1976) 265 Ind. 363, 354 N.E.2d 219, *cert. den.* 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 541.

▆ There is no question that appellant's instruction, "You are further instructed that Grace Smith's front porch is part of her premises, upon which that right to defense can arise," is a correct statement of the law and that there is evidence in the record to support the giving of such instructions. However, the substance of this instruction was covered adequately by correct instructions given by the court. An instruction which is correct will not be found to be erroneous merely because it was not an ampler statement of the law. *Bissot v. State*, (1876) 53 Ind. 408. *See also Malo v. State*, (1977) 266 Ind. 157, 361 N.E.2d 1201. It was not error, therefore, for the trial court to refuse to give this part of appellant's tendered instruction No. 3.

▆ Neither was it error for the trial court to refuse to instruct the jury that appellant was "afforded great latitude in the use of force" in defending her premises against trespassers.

"The purpose of an instruction is to inform the jury of the law applicable to the facts in such a manner that jurors will not be misled, and that they may clearly comprehend the case and arrive at just, fair, and correct verdict." *Foster v. State*, (1974) 262 Ind. 567, 320 N.E.2d 745, 748, citing *Cockrum v. State*, (1968) 250 Ind. 366, 234 N.E.2d 479.

"Instructing the jury, . . . means to instruct as to the law applicable to the case. . . . Instructions should be designed to assist the jurors to arrive at a verdict according to law and not according to their ideas of what is right or best, which may be an entirely different thing. Instructions that might suggest an alternative more to the jury's liking than a verdict according to law are improper, unless reasonably required to minimize the risk of a verdict rendered for equally

improper reasons." *Malo v. State*, (1977) 266 Ind. 157, 361 N.E.2d 1201, 1205.

Although appellant's tendered instruction that appellant was "afforded great latitude in the use of force" may not have been an erroneous statement of the law of self defense[6] per se, the court's instruction which included a verbatim statement of the statute[7] and which defined reasonable force as "that force which reasonably appears to be reasonably necessary under all the circumstances of the particular case. . . ." was a more objective statement of the law. Thus, while the appellant's tendered instruction appears to have been designed to aid the jury in reaching a verdict favorable to the appellant, the court's instruction was more likely to aid the jury in reaching a verdict favorable to the law. The latitude permitted appellant in her use of force must be limited by reasonableness. *McFarland v. State*, (1979) Ind., 390 N.E.2d 989.

▆ In the court's failure to define reasonable force to permit her great latitude in her use of force, appellant finds error of constitutional dimension. (Issues One, Two, Four, and Five above.) Appellant contends in Issue Two that the crime of battery, IC 35–42–2–1, cannot be defined without reference to the defense of dwelling statute, IC 35–41–3–2(b). Appellant further contends that as a result of the lack of a legislative definition of reasonable force in the latter statute, the jury rather than the legislature defines the crime. This, according to appellant, is contrary to law in that crimes must be defined by the legislature. As pointed out above, this line of reasoning fails to distinguish between a crime and a defense. It would be impossible as appellant suggests for the legislature to spell out every conceivable situation in which the use of non-deadly force in defense of one's self or property would be unreasonable. In fact, not only in Indiana, but as a general rule, the question of whether reasonable force has been used in the defense of one's property or person is a question of fact to be determined by the

---

**6.** *See Trinkle v. State*, (1972) 259 Ind. 114, 284 N.E.2d 816.

**7.** *See* footnote 1.

jury. 6 Am.Jur.2d *Assault and Battery* § 88 (1963); *Degenias v. State*, (1979) Ind. App., 386 N.E.2d 1230. Appellant should also be reminded that pursuant to the Indiana Constitution the jury determines both the facts and the law. There is no merit to appellant's position in Issue Two.

In Issues One and Five appellant contends that the term "reasonable force" defies definition and invites persons to be ignorant of the law since they cannot know from the statute when the use of less than deadly force is unreasonable. Lacking a statutory definition of "reasonable force," the defense of the dwelling statute, IC 35-41-3-2(b), is unconstitutionally vague; thus, contends appellant, she was denied a fair trial. Once again the confusion between the statute charging the crime and the statute providing for a defense is apparent. We find nothing in the statutes defining either the offense or the defense which is so indefinite as to be unintelligible to persons of ordinary comprehension. 8 I.L.E. *Criminal Law* § 7; *Stanley v. State*, (1969) 252 Ind. 37, 245 N.E.2d 149. Appellant does not contend that she was precluded by the statute from raising any defense that she had; in fact, she admits that the defense of the dwelling was her only defense. Since it is merely the statement of that defense as embodied in the court's instruction which she is challenging we are not willing to find the court's statement unconstitutional where (1) it is an accurate statement of the law and (2) specific constitutional objections to the statute were not raised properly in the court below. Appellant cannot overcome the presumption of constitutionality where there is a legal vacuum. *Board of Commissioners of Howard County, supra; City of Hobart, supra.*

Appellant contends in Issue Four that the "reasonable force" requirement of IC 35-41-3-2(b) offends the equal protection requirement of both the Indiana and the United States Constitutions because appellant could not afford to equip her home with those methods of home defense such as guard dogs or alarm systems which society accepts as "reasonable" or, in the alternative, because appellant was not tried by a jury of paupers who would perceive "reasonableness" as she would. These arguments are patently absurd.

In essence, appellant's arguments in Issues One, Two, Three, Four, and Five are reduced to the single contention that the defect in IC 35-41-3-2(b) and in the court's instruction No. 5 would have been cured had the court given her tendered instruction stating that she was to be afforded great latitude in the force she could use to defend her dwelling rather than the instruction that she was to be limited to the use of reasonable force under the circumstances. On the failure of the trial court to give appellant's instruction No. 3 we find no error.

*Issue Six*

As her sixth ground for error appellant contends that the court admitted evidence of her 1970 and 1973 theft convictions for impeachment purposes even though they were remote in time and, therefore, more prejudicial than probative in aiding the trier of fact in evaluating her testimony. Appellant admits that theft convictions are admissible under existing Indiana case law to impeach the credibility of a witness. She contends, however, that the distinction which permits such collateral evidence as past convictions to be considered by a jury as to the credibility, but not as to evidence of the character, of the accused is a distinction without a difference since juries will perceive an attack on credibility as an attack on character. Appellant argues, therefore, that this court should now change Indiana case law to remove theft from the list of crimes which may be used for impeachment purposes because theft was not within the contemplation of the legislature, embodied in IC 34-1-14-14, as one of the infamous crimes which would render a common law witness incompetent. Appellant contends that theft convictions per se are excessively prejudicial.

It has long been the rule in this state that a defendant who testifies in her own behalf in a criminal trial is subject to the same rules of impeachment as are other

witnesses. *Clark v. State*, (1875) 50 Ind. 514. Justice Hunter, writing for our Supreme Court, enunciated the current Indiana position on the question of impeachment of witnesses by the use of prior convictions in *Ashton v. Anderson*, (1972) 258 Ind. 51, 279 N.E.2d 210. In *Fletcher v. State*, (1976) 264 Ind. 132, 340 N.E.2d 771, he spoke for the majority of the court specifically on the issue of the admissibility of prior theft convictions as impeaching evidence. It should be noted that appellant's argument is essentially the same as is presented by the dissenting opinion in *Fletcher*. This argument, *i. e.*, that theft convictions which have little or no relevance to credibility and are therefore irrelevant and highly prejudicial must not be admitted by the trial court, was rejected by the majority:

> "We reject as too cumbersome any procedure which would require the trial court to probe about the record of the witness's prior theft conviction to ascertain the common law equivalent, prior to admitting any evidence of the conviction at trial. We therefore hold that proof of prior theft convictions are admissible for impeachment purposes under that portion of *Ashton* which allows proof of crimes involving 'dishonesty or false statement.'" *Id.* 774.

However, where a theft conviction arises from a factual situation which does not indicate a lack of truthfulness or veracity on the part of the witness, the court provides a method for excluding reference to that conviction:

> ". . . [W]e believe that counsel should make such facts known to the [trial] court through a pre-trial motion in limine, supported by appropriate affidavits, thereby allowing the court the opportunity to exclude, in its discretion, any reference to such prior conviction. The vigilant use of this procedure by counsel will insure that the guidelines of *Ashton* are adhered to, without disrupting the trial." *Id.* 775.

We find no reason in the instant case to disagree with Justice Hunter's sound reasoning, especially since appellant made no effort to avail herself of the method of excluding the evidence of her convictions in the manner set out above.

*Issue Seven*

The seventh issue raised by appellant is whether the trial court erred in admitting over her objection photographs of her residence which were taken months after the incident charged and which were taken during the day rather than at night. Appellant contends that it was error to admit such photographs into evidence since they did not accurately reflect the appearance of the premises as they would have appeared at the time of the occurrence. Appellant later expanded her objection in her motion to correct errors and in her appellate brief to contend that the introduction of the photographs was prejudicial to her because the dilapidated condition of the residence shown in the pictures would "imply to the jurors her home was *not* a man's castle and *not* a place worth much force defending."

We remind appellant of the general rule that an objection to the admission of evidence, photographic or other, must state specifically the grounds for the objection. 28 I.L.E. *Trial* § 64 (1960); *Gradison v. State*, (1973) 260 Ind. 688, 300 N.E.2d 67. Where a specific objection is stated, the implication arises that there are no others or if there are, they are waived. *Bass v. State*, (1894) 136 Ind. 165, 36 N.E. 124; *Reed v. Trainor*, (1968) 142 Ind.App. 192, 233 N.E.2d 685. By objecting only to the fact that the photographs did not depict what they purported to depict, appellant was in essence objecting to the relevance of the photographs. That is, because they failed to show what they purported to show, the photographs lacked probative value. Counsel may not expand the argument now to object to the evidence on the ground that the prejudicial effect of the photographs outweighed their probative value. By not objecting to the prejudicial effect of the photographs at trial appellant's counsel waived the right to raise that argument on appeal.

The admissibility of photographic evidence is basically a matter with-

in the sound discretion of the trial court which will not be disturbed unless an abuse of discretion can be clearly shown. *Evansville School Corp. v. Price*, (1965) 138 Ind. App. 268, 208 N.E.2d 689; *Thornton v. Pender*, (1978) Ind., 377 N.E.2d 613. The trial court's discretion in admitting photographic evidence in Indiana has been circumscribed by several fairly strict foundational requirements depending on whether the photograph is being offered either as substantive or merely as demonstrative evidence. *Bergner v. State*, (1979) Ind.App., 397 N.E.2d 1012. Here we need consider only the rules which apply to the admissibility of photographs as demonstrative evidence. When a photograph is offered as demonstrative evidence, *i. e.,* not as evidence in itself, but as a nonverbal method of expressing a witness's testimony, courts in Indiana require (1) that a witness state that the photograph truthfully and accurately represents what it is intended to depict and (2) that the photograph be relevant either in tending to prove or disprove a material fact or in aiding the jurors' understanding of other evidence. *Id.* In the instant case the trial court could easily have determined that the photographs of the site would be helpful to the jurors in understanding testimony as to where the parties were located at the time of the occurrence and thus in determining which witnesses to believe or which testimony seemed more plausible. Therefore, the trial court could have found the photographs to be relevant. The witnesses who testified as to the accuracy with which the photographs depicted the site on the night in question noted that (1) the battery did occur at night and (2) they were not certain whether or not the glass was out of the storm door window as depicted in the photographs. These deviations as to details, nevertheless, were not so great that they would mislead or confuse the jury. The fact that there were minor deviations in the appearance of the site as depicted in the photographs in comparison with the ac-

tual appearance would go only to the weight to be given to the photographs and testimony which they supported and not to their admissibility. *Id.*; III Wigmore, *Evidence* § 792 (Chadbourn rev. 1970). We find no error in the admission of the photographs of appellant's dwelling.

*Issue Eight*

Appellant's eighth issue questions the sufficiency of the evidence to prove beyond a reasonable doubt that she was not engaged in self-defense, more specifically in the defense of her dwelling or premises,[8] when she committed the battery. We acknowledge that under Indiana's current criminal code, as well as under the previous code, "the burden is on the State to negate the claim of self-defense." *Woolum v. State*, (1978) Ind.App., 381 N.E.2d 1072, 1074. On review, however, this court will neither weigh the evidence nor judge the credibility of witnesses. These are duties for the trier of fact. Likewise, the question of self-defense or defense of one's dwelling is a question for the trier of fact. *Cammack v. State*, (1970) 254 Ind. 637, 261 N.E.2d 862; *Scruggs v. State*, (1974) 161 Ind.App. 666, 317 N.E.2d 807. Where the evidence is conflicting, as in the present case, the trier of fact may reject the defendant's version of what happened. *Woolum, supra; Cammack, supra.* This court, then, will consider only the evidence most favorable to the verdict and will uphold it if there is substantial evidence of probative value from which the jury could have determined beyond a reasonable doubt that appellant did not act in defense of her dwelling. *Woolum, supra.* To hold that the jury could have found beyond a reasonable doubt that Smith did not act in self-defense or in defense of her dwelling and thus is guilty of battery, this court need not find evidence adequate to overcome every reasonable hypothesis of innocence, but need find only that a reasonable inference may be drawn from the evidence which tends to support the finding of guilt. *Jones v. State*, (1978)

8. The right to defend one's property or premises is generally recognized as an extension of the right to defend one's person; thus, the legal principles applicable in cases of self-defense are for the most part applicable to cases of defense of the dwelling. 6 Am.Jur.2d *Assault and Battery* § 86 (1963); 3 I.L.E. *Assault and Battery* § 13 (1978).

Ind., 377 N.E.2d 1349; *Davis v. State*, (1980) Ind.App., 398 N.E.2d 704. Furthermore, "[t]here is no requirement for the State to specifically introduce evidence to refute the elements of self-defense. Such may be done by the evidence in its entirety in the State's case in chief." *Hester v. State*, (1978) 267 Ind. 697, 373 N.E.2d 141, 142; *Jennings v. State*, (1974) 262 Ind. 476, 318 N.E.2d 358. In the final analysis, a conviction will be reversed only if no reasonable person could say that an issue had been proved beyond a reasonable doubt. *Beard v. State*, (1975) 262 Ind. 643, 323 N.E.2d 216. Considering only the evidence most favorable to the State as set forth in the facts above, we cannot say that there is no substantial evidence of probative value or that there are no reasonable inferences therefrom which would negate appellant's claim that she was defending her dwelling. Neither can we say that no reasonable person could have reached the present result. There is ample evidence from which the jury could reasonably deduce that appellant knowingly or intentionally engaged in the forbidden conduct, was not reasonably in fear of harm to herself or her dwelling, and did in fact use excessive force.

Judgment affirmed.

ROBERTSON, P. J., and NEAL, J., concur.